**Guadalupe MUNOZ, et al.,**
**Plaintiffs–Appellants,**

v.

**Louis SULLIVAN, M.D., Secretary of the Department of Health and Human Services, Defendant–Appellee.**

No. 90–15038.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1990.

Decided April 15, 1991.

Gill Deford, Peter Komlos–Hrobsky, National Senior Citizens Law Center, Los Angeles, Cal., for plaintiffs-appellants.

Paul Babwin, Central California Legal Services, Inc., Fresno, Cal., for plaintiffs-appellants.

Stuart M. Gerson, Asst. Atty. Gen., William Kanter, Appellate Staff, John Copeland Nagle, Office of Legal Counsel, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before REINHARDT and HALL, Circuit Judges, and RE, Judge.*

REINHARDT, Circuit Judge:

## OVERVIEW

Guadalupe Munoz filed suit against the Secretary of the Department of Health and Human Services ("the Secretary"), alleging that the six-month rule set forth in 42 U.S.C. § 1382c(b) (1983) is unconstitutional. Under the six-month rule, when a married couple, both of whom are eligible for Supplemental Security Income benefits, separate, they are paid benefits at the level set for married couples, rather than the higher level set for individuals, for a period of six months after the separation or until the marriage has ended. Munoz challenged the constitutionality of the six-month rule. She claimed that the benefit rate should be converted to the rate applicable to single persons immediately upon separation because the six-month rule bears no rational relationship to the purposes of the statute. She sought declaratory and injunctive relief for herself and for all similarly situated California residents.

The district court, applying the rational basis test, upheld the validity of the statutory rule. The court also denied Munoz' motion for class certification, finding that it lacked subject matter jurisdiction over members of the proposed class. We affirm the district court's holding that the rule bears a rational relationship to the Congressional goal of deterring collusive separations; accordingly, we do not reach the issue of class certification.

* Hon. Edward D. Re, Chief Judge of the United States Court of International Trade.

## FACTS

In order to provide disability benefits for indigent persons who are over sixty-four, blind, or disabled, Congress created the Supplemental Security Income ("SSI") program in 1972. The program is administered by the Social Security Administration of the Department of Health and Human Services ("Department"). To qualify for SSI, an individual must be both categorically and financially eligible: he must be either aged, blind, or disabled, *and* must have income and resources which are below the levels set forth in 42 U.S.C. § 1382(a) (1983). Persons who satisfy these requirements are defined as "eligible individuals." *Id.* An eligible individual who is married to another eligible individual is defined as an "eligible spouse." *Id.* § 1382c(b). Together, the married eligible individuals comprise an "eligible couple." 20 C.F.R. § 416.412 (1990). The couple's financial eligibility is determined by combining their income and resources, 42 U.S.C. § 1382(a)(2)(A) (1983), and comparing the total with the eligibility levels. 42 U.S.C. § 1382(a)(2) (1983). The Department considers the income and resources of one spouse to be available to the other.[1]

"[I]in order to take account of the fact that two people living together can live more economically than they would if each lived alone," Congress determined that the benefits payable to a couple should be smaller than the total of the individual benefits payable to two unmarried eligible persons.[2] Thus, the combined payment for an eligible couple is only approximately two-thirds of the amount that two eligible individuals would receive if they remained single and pooled their SSI benefits.

The statute defines an "eligible spouse" as "an aged, blind, or disabled individual who is the husband or wife of another aged, blind, or disabled individual *and who has not been living apart from such other aged, blind, or disabled individual for more than six months.*" 42 U.S.C. § 1382c(b) (1983) (emphasis added). Thus, the eligible couple continues to be treated as a couple until either six months have passed or the spouses cease to be married.[3] As a result, their income and resources continue to be combined for purposes of determining their eligibility and benefit levels, and during this six-month period, each continues to receive a check for half of the SSI payment for the couple. This is the six-month rule.[4]

Prior to July 1988, Munoz and her husband were both eligible for SSI. She had an outside monthly income of $208, and he had an outside monthly income of $681: together they received SSI benefits totaling $48 per month. In July 1988, Munoz separated from her husband, but in accordance with the six-month rule, she and her husband continued to be considered a couple for the purposes of calculating SSI benefits for six months following the separation. As a result, during the six-month period, Munoz received only half of the couple's SSI benefit, which amounted to $24 per month. She claims that had the rule not been in effect, she would have received an eligible individual benefit of $387 per month.

---

1. Similarly, when an eligible individual marries a spouse who is not aged, blind, or disabled, and who is thus ineligible for SSI, the income and resources of the latter are also deemed to be available to the former. *Id.* § 1382c(f)(1).

2. H.R.Rep. No. 231, 92nd Cong., 2nd Sess. 150 (1971), *reprinted in* 1972 U.S.Code Cong. & Admin.News, 4989, 5136. In 1989, for example, the federal monthly benefit rate for SSI recipients with no other income was $553 for a couple and $368 for an individual. 53 Fed.Reg. 43933 (Oct. 31, 1988). If the recipients have other sources of income, the Department uses a formula which deducts part of the outside income from the total SSI allowance, and reduces the SSI benefits accordingly.

3. The rules governing when the Department considers a marriage to have ended are set forth in 20 C.F.R. § 416.1832 (1990).

4. The six-month rule was eliminated as of October 1, 1990. Pub.L. No. 101–239, § 8012, 103 Stat. 2464 (1989). As a result of this amendment, when an eligible couple separates, the two spouses cease to be treated as a couple in the calendar month immediately following the separation. However, since that change does not apply retroactively, Ms. Munoz does not benefit from it and retains a cognizable claim.

Munoz filed this class action in federal district court for the Eastern District of California, seeking declaratory and injunctive relief. She alleged that the six-month rule is unconstitutional in two ways. First, she contended that the six-month rule is not rationally related to the purpose that the Secretary ascribed to it. Second, she argued that there is no rational basis for applying the rule only in cases in which both spouses are eligible for SSI and not in those in which only one of the spouses is eligible.[5]

The district court decided the case on the parties' cross-motions for summary judgment. Finding that the statutory classification is rationally related to a legitimate governmental interest, the court rejected Munoz' first challenge.

In response to Munoz' equal protection challenge to the application of the six-month rule to an eligible couple but not to an eligible individual married to an ineligible individual, the Secretary argued that the classification is rationally related to two legitimate governmental objectives. First, the Secretary argued that couples in which only one spouse is eligible for SSI benefits are less likely to conspire to defraud the government or manipulate the program, because the ineligible individual will receive nothing from the government as a result of an actual or claimed separation. Accordingly, only one of the two individuals involved has any incentive to fabricate the separation. In contrast, when both spouses are eligible, each has a financial inducement to enter into a collusive separation. Thus, the classification is related to the governmental interest of reducing program fraud and manipulation.

Second, whereas the separation of a couple composed of two eligible persons entails two eligibility investigations, two re-

calculations of benefits, and two sets of administrative appeal rights, the separation of an eligible individual from an ineligible spouse entails only one set of administrative measures. Thus, argued the Secretary, because the administrative burden associated with the separation of couples in which both spouses are eligible for SSI is greater than that associated with the separation of couples in which only one is eligible, the government is justified in delaying a change in the payment levels for those in the former category, even though the change is made immediately for those in the latter.

The district court accepted each of the Secretary's justifications and concluded that the requisite rational relationship had been established. Accordingly, the district court granted the government's motion for summary judgment on Munoz' constitutional claims. The district court further denied Munoz' motion for class certification, concluding that the court lacked subject matter jurisdiction over members of the class. This appeal followed.[6]

## DISCUSSION

### I. *SCOPE OF REVIEW*

■ Our review of SSI eligibility rules is necessarily limited in scope. As the Supreme Court has clearly stated, "[p]articularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Weinberger v. Salfi,* 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975) (quoting *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367,

---

5. When an eligible individual separates from a categorically ineligible spouse (i.e., one who is not aged, blind, or disabled), the two cease to be treated as a couple in the calendar month immediately following the separation. 20 C.F.R. § 416.1163(f)(2) (1990).

6. In the district court, Munoz also challenged the six-month rule on the ground that differences in state laws regarding divorce create two

classes, distinguishable only by state of residence. While the residents of some states could obtain divorces quickly, those of others cannot obtain divorces before the end of the six-month period. Thus, she argued, the rule unfairly discriminated against the latter group. The district court rejected this argument and Munoz has not renewed it on appeal.

1373, 4 L.Ed.2d 1435 (1960)) (brackets in original). Thus, the inquiry here must focus on whether the six-month rule denies SSI benefits to certain individuals on an arbitrary basis, without any rational justification.

## II. *CONSTITUTIONALITY*

■ The due process clause of the fifth amendment includes an equal protection component. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). When the government utilizes a "suspect classification" or draws distinctions among individuals that bear on the exercise of a "fundamental right," the challenged regulation will be subject to strict scrutiny.[7] Otherwise, the distinctions that the government draws among persons need only be rationally related to a legitimate governmental purpose. *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980) (upholding Social Security benefit scheme where "there [we]re plausible reasons for Congress' action"). Since this case involves no claim that the six-month rule discriminates on the basis of a suspect classification or that it inhibits the exercise of a fundamental right, our inquiry here is limited to the question whether the six-month rule is rationally related to a legitimate governmental purpose.

### A. *Is the Six–Month Rule Rationally Related to the Purpose of Reducing the Economic Incentives for Fraudulent Separations?*

■ The parties agree that reducing the economic incentives for fraudulent separations was the primary purpose of the six-month rule.[8] Munoz contends that the six-month rule is not rationally related to this purpose. Although the parties and the court below treated this contention as an equal protection argument, it is not immediately clear why it should be so considered.[9] Equal protection is not generally thought to require rationality in the abstract, but rather that the *classifications* the government employs—i.e., the lines it draws among classes of persons—be rational. The general requirement that a regulation be rationally related to a legitimate governmental purpose is an element of due process.[10] However, since Munoz' equal protection challenge arises via the fifth amendment's due process clause, and since the rational basis test is identical under the two rubrics, we need not concern

---

7. *See, e.g., Brown v. Board of Educ.,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (treating race as a suspect classification); *Kramer v. Union Free School Dist. No. 15,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (holding that the right to vote is fundamental).

8. The legislative history confirms that Congress was concerned about the possibility of fraudulent separations. *See* H.R.Rep. No. 321, 92nd Cong., 2nd Sess. 150, *reprinted in* 1972 U.S.Code Cong. & Admin.News 4989, 5136 (remarking that "[i]n the absence of [a provision to determine marital status] in the assistance program, there would be a strong incentive for married couples to allege that they were not married.... [T]o avoid encouraging couples to live separately in order to get the higher total benefit, your committee's bill provides that an eligible individual and spouse will receive a couple's benefit even though they live apart"). In addition, the Tenth Circuit has concluded that "[t]he six-month rule was enacted 'to avoid encouraging couples to separate in order to receive the higher total benefits available to individuals.'" *Mangum v. Mitchell,* 638 F.2d 203, 206 (10th

Cir.1980) (quoting *Mansfield v. Weinberger,* 398 F.Supp. 965, 969 (D.D.C.1975)).

9. Munoz' second basis for challenging the six-month rule—her contention that it unfairly applies only to separated eligible couples and not to separated couples where one spouse is categorically ineligible—is clearly an equal protection argument. *See infra* at 1405.

10. Since the end of the so-called *Lochner* era, *see Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), the Supreme Court has held that due process requires minimal rationality in legislative enactments. *See e.g., Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). This highly deferential standard is functionally equivalent to the rational basis test in equal protection law. *See* L. Tribe, *American Constitutional Law* § 8–7, at 582 n. 12. *See also Mangum,* 638 F.2d at 206 (observing, in case upholding the six-month rule, that "equal protection and due process arguments are intertwined," and applying rational basis test to both).

ourselves with the question of which constitutional requirement is the more appropriate doctrinal starting point for evaluating Munoz' argument.

Other courts examining the six-month rule have held that the rule satisfies the rational basis test. The Tenth Circuit has remarked that "[t]he statutory classification is rationally related to the achievement of the congressional purpose [of reducing fraud] and not subject to constitutional attack." *Mangum v. Mitchell*, 638 F.2d 203, 206 (10th Cir.1980). Earlier, the District Court for the District of Columbia had held that there is a rational basis to the six-month rule and "that it is free from invidious discrimination." *Mansfield v. Weinberger*, 398 F.Supp. 965, 970 (D.D.C.1975).

Both courts relied on *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), where the Supreme Court upheld a nine-month duration-of-relationship requirement in the Social Security Act. The provision in question there required a couple to have been married for at least nine months for the surviving spouse to be eligible for certain benefits in the event of the death of the other. The Court held that Congress' goal of preventing collusive marriages justified the rule. The Court set forth the standard to be employed in determining the reasonableness of classifications in welfare programs:

> The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

*Salfi*, 422 U.S. at 777, 95 S.Ct. at 2472–73.

■ The six-month rule satisfies this standard. Because two eligible individuals living apart receive a higher level of SSI benefits than an eligible couple, Congress could rationally have concluded that there is a risk that an eligible couple might fraudulently represent themselves to be separated in order to receive more money than they are entitled to receive as a couple. The six-month rule reduces their incentive to perpetrate such a fraud by reducing the total amount of additional money they receive by separating.

It is of course true that the six-month rule does not *eliminate* whatever incentive may exist for couples to make false claims of separation. The potential for such conduct is inherent in any system that takes account of economies of scale by providing higher benefits to individuals who do not pool their resources than to those who do. The six-month rule attempts to *reduce* the incentive. Congress could have rationally concluded that some eligible couples contemplating fraudulent separation would not make the attempt if they received no additional benefits from doing so for six months. Furthermore, Congress could rationally have concluded that the difficulty of distinguishing between collusive and genuine separations justified a rule that in practice could prove to be either overinclusive or underinclusive.

Munoz nevertheless contends that the rule in fact *encourages* separations because it creates an incentive for the spouse with the higher income to separate in order to keep all of his or her personal income as well as half of the couple's SSI benefit for the six months following the separation. The assumption underlying this argument is that the higher-income spouse would be entitled to less than one-half of the benefit that the couple jointly receives if he or she were considered on an individual basis. Since the rule delays the benefit recalculation for six months, the higher-income spouse would receive a higher benefit during the period following the separation than he or she would receive in the absence of the rule.

However, Munoz' argument plainly does not demonstrate that the six-month rule encourages *fraudulent* separations—i.e., situations in which the couple *colludes* to make a false claim of separation. The higher-income spouse receives more money under the rule because the lower-income spouse receives less. Thus, the lower-income spouse has a disincentive to separate

under the rule, and is thereby discouraged from conspiring with the higher-income spouse to claim to be separated. Since it takes two to collude, the six-month rule does not encourage fraudulent separations.

At most, Munoz' argument tends to support the proposition that the rule encourages *bona fide* separations. Even assuming that Munoz' argument is correct, it does not undermine our conclusion that the rule is rationally related to the purpose of discouraging *fraudulent* separations. Rational basis scrutiny simply does not require that legislation which furthers one Congressional goal have no adverse side effects. That the means Congress chose for discouraging fraudulent separations may have the incidental effect of encouraging genuine separations can not be said to render the Congressional scheme irrational.

In any event, Congress was not required to reduce incentives for *bona fide* separations, whether created by the six-month rule or by any other statutory or nonstatutory condition, simply because it chose to deal with the problem of fraudulent separations. Legislative schemes frequently regulate only those aspects of a problem that Congress has an immediate interest in or the political will to address. That is simply the way our system of government functions. When enacting a statute, Congress is free to select particular aspects of an overall problem it believes warrant legislative attention and to ignore others that may seem, even by objective standards, to be equally or more pressing. Such a Congressional judgment does not violate the rationality standard we are required to apply here.

We therefore find that Congress could have rationally determined that the six-month rule reduces the incentive for an eligible couple to manufacture a fraudulent claim of separation, and that this determination constituted an appropriate basis for its adoption of the rule.

B. *Is There a Rational Basis for the Distinction Between Separated Eligible Couples and Other Separated Couples?*

The Supreme Court has explained that the guarantee of equal protection does not allow " 'different treatment [to] be accorded to persons placed by a statute into different classes *on the basis of criteria wholly unrelated to the objective of that statute.*' " *Johnson v. Robison*, 415 U.S. 361, 374, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974) (emphasis added).

■ Munoz asserts that there is no rational basis for applying the six-month rule only to separating couples in which both spouses are categorically eligible for SSI, and not to separating couples in which only one of the spouses is categorically eligible. She claims that couples in which both spouses are eligible for SSI differ in no relevant way from couples in which only one spouse is eligible.

As he did in the court below, the Secretary has proffered two justifications for applying the six-month rule to eligible couples only. First, he argues that an eligible couple has a greater economic incentive to separate fraudulently than does a couple consisting of one categorically eligible spouse and one categorically ineligible spouse. In addition, the Secretary asserts that the six-month waiting period eases the administrative burden on the Department that results from having to recalculate two sets of benefits when an eligible couple separates. Neither of the rationales offered by the Secretary appears in the statute or its legislative history: Congress did not state what the purpose of applying the six-month rule only to eligible couples was.

As we stated in *Christian Science Reading Room Jointly Maintained v. San Francisco*, 792 F.2d 124, 124 n. 2, *amending* 784 F.2d 1010, 1013 (9th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 953, 93 L.Ed.2d 1002 (1987), it is "not altogether clear" when a court may consider a *post hoc* justification for a legislative enactment. In *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 n. 16, 95 S.Ct. 1225, 1233 n. 16, 43 L.Ed.2d 514 (1975), the Supreme Court stated that a court is entitled to reject an asserted legislative purpose "when an examination of the legislative scheme and its history demonstrates that

the asserted purpose could not have been a goal of the legislation." The Court noted in *Fritz*, however, that it is "constitutionally irrelevant" whether the asserted purpose "in fact" motivated the legislature, because the "Court has never insisted that a legislative body articulate its reasons for enacting a statute." 449 U.S. at 179, 101 S.Ct. at 461. Given that *Wiesenfeld* survived *Fritz, see Minnesota v. Clover Leaf Creamery*, 449 U.S. 456, 463 n. 7, 101 S.Ct. 715, 723 n. 7, 66 L.Ed.2d 659 (1981), in *Christian Science Reading Room*, we attempted to harmonize the cases by noting that the actual legislative purpose is irrelevant unless we are persuaded by our examination of the record that the asserted purpose could not have been the actual purpose. 792 F.2d at 124 n. 2.

The Secretary contends that the approach suggested by *Christian Science Reading Room* is in conflict with the level of scrutiny applied in *Shaw v. State of Oregon Pub. Employees' Retirement Bd.*, 887 F.2d 947, 948–49 (9th Cir.1989). In fact, there is no conflict. In *Shaw*, the plaintiff argued that an Oregon statute that treated retired police officers and firefighters differently from other retirees was irrational. We upheld the statute over Shaw's objection that neither the statute nor its legislative history stated its purpose because we determined that "[t]he legislature could, and according to [Oregon] *did*, conclude that the retirement differential" was rationally related to a legitimate state interest. *Shaw*, 887 F.2d at 949 (emphasis added). *Shaw*, like *Fritz*, did not involve any showing that the hypothesized purpose could not have been the actual purpose.

Applying these general principles, we accept the Secretary's first proffered justification for the differential application of the six-month rule: given that the general purpose of the six-month rule was to reduce the incentives for fraudulent separations, the different economic incentives faced by the two classes of couples could well have been the actual cause for Congress' different treatment of the two classes.

Thus, we agree with the Secretary that the distinction between the two classes of separating spouses could rationally have been justified by the different incentives each class faces. As we have discussed, the principal economic incentive to separate arises from Congress' determination that two eligible individuals living alone are entitled to a higher level of SSI benefits than they would be if they were a married couple living together. At 1989 levels, a couple could potentially increase the monthly SSI benefits from a maximum possible level of $553 per month to $736 per month through a fraudulent separation. *See supra* note 2.

This economic incentive for separation is simply absent in the case of a married couple in which only one spouse is categorically eligible. Separation will not result in two sets of individual benefits because, by definition, only one of the two is eligible for any SSI benefits.

Admittedly, there will sometimes be a different kind of economic incentive to separate for a married couple with only one categorically eligible spouse. If the categorically ineligible spouse has a higher income than the categorically eligible spouse, deeming the ineligible spouse's income to the eligible spouse will reduce the level of SSI benefits. In these circumstances, the couple will have an economic incentive to claim to be separated. However, the fact that Congress chose not to employ an analogue of the six-month rule to reduce the incentive for fraud that results from deeming income does not invalidate the six-month rule. Congress is under no obligation to solve every problem at once. That the classifications Congress used to determine the range of applicability of the six-month rule may be somewhat underinclusive in effect does not render those classifications irrational.

We are aware that under circumstances of substantial income disparity between the spouses, the eligible spouse with the lower outside income—often the woman—will suffer more during the six-month waiting period. During that period, the higher-income spouse's outside income will be deemed available to the lower-income spouse, though it may not in fact be avail-

able.[11] The inequity of the rule in some cases, however, does not overcome the fundamental fact that may have rationally caused Congressional concern: if the couple engages in a sham separation, the husband and the wife will *jointly* receive more funds than if they live together and remained legally married. Congress was thus free to draw the distinctions it did.

### C. *Administrative Convenience*

The Secretary also argues that the workload associated with the separation of eligible couples is greater than that associated with the separation of couples with only one eligible spouse, and that this increased administrative burden justifies the six-month rule.[12] While the administrative burden argument borders on the frivolous, and would hardly appear to provide a justification for an inequitable allocation of benefits, we do not need to reach this issue because of our finding that the six-month rule is rationally related to the government's interest in preventing fraudulent claims of separation.

### III. *CLASS CERTIFICATION*

Since we find that the grant of summary judgment for the Secretary on the fifth amendment claims was proper, we do not reach the question whether the plaintiff class was properly certified. We express no opinion on that issue.

AFFIRMED.

---

**11.** Although Congress has repealed the six-month rule, *see supra* note 4, we cannot choose to accord the additional SSI benefits to the plaintiff where Congress has itself determined not to make the statutory change retroactive.

**12.** The Secretary claims that the separation of an eligible couple entails two eligibility investigations, two recalculations of benefits, and two sets of administrative and judicial appeal rights, whereas that of a couple with only one eligible spouse entails only one administrative determination. Thus, the Secretary contends that the different workload associated with the separation of an eligible couple is rationally related to the rule's objective of reducing the Department's administrative burden.