**In re Ibolya RAUSCH, Debtor.**

**Bankruptcy No. BK–S–95–23707–LBR.**

United States Bankruptcy Court,
D. Nevada.

May 20, 1996.

Jack Ferm, Las Vegas, NV.

Tom Grimmett, Trustee, Las Vegas, NV.

Ibolya Rausch, pro se.

### MEMORANDUM DECISION RE: ORDER TO SHOW CAUSE

LINDA B. RIEGLE, Chief Judge.

On September 5, 1995, Ibolya Rausch filed a Chapter 7 [1] petition pro se. On her "Statement of Assistance by Non–Attorney", she disclosed that she had paid $150 to "Jack Ferm" for assistance in filing the petition. A "Statement of Assistance by Non–Attorney Re: Filing The Bankruptcy Petition" was signed by Ferm. It failed to state his Social Security Number ("SSN"). Instead, Ferm provided his SSN to the bankruptcy court's intake supervisor, and in the place provided for disclosure of the SSN, stated: "See Gail Intake Supervisor." Ferm did not place his SSN on the petition, the schedules, the statement of financial affairs, or the "Chapter 7 Individual Debtor's Statement of Intention." Ferm also failed to provide his name, address and signature on the schedules, the statement of financial affairs, and the "Chapter 7 Individual Debtor's Statement of Intention." [2] Earlier, on August 30, 1995, this Court had entered an order denying Ferm's

---

1. All Chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Ferm did provide his name, address and signature on a "Statement of Assistance By Non–Attorney Re: Filing The Bankruptcy Petition."

motion to use an identifying number other than his SSN on petitions prepared by him.

Upon a motion by the United States Trustee ("UST") this Court ordered Ferm to show cause why he (1) should not disgorge the fee paid to him by the Debtor; and (2) should not be fined for violation of 11 U.S.C. § 110(c); and (3) should not be held in contempt of the Court's August 30, 1995 order denying Ferm's motion to use an identifying number other than his SSN.

The UST argued in its show cause motion that Ferm failed to provide his SSN on 17 "documents",[3] that he failed to state his name and address on 15 "documents", and that failed to sign 16 "documents." The UST argues that each failure by Ferm to provide his name, address, signature and SSN constitutes a separate violation of 11 U.S.C. §§ 110(b)(1) and (c)(1). The UST asks that Ferm be fined $24,000 ($500 for each of the 48 "documents" filed), that he be required to disgorge his fee, and that he be found in contempt of the Court's order of August 30, 1995 denying Ferm's motion to use an identifying number other than his SSN.

Ferm argues that he has "reasonable cause" for not placing his SSN on the documents for filing, in that public disclosure of his SSN would leave him vulnerable to SSN-related fraud and "credit theft." He contends that disclosure of his SSN to the bankruptcy court's intake supervisor satisfies 11 U.S.C. § 110(c), and that Congress cannot require him to make his SSN "known to the general public." Ferm challenges § 110(c)(2) on a number of constitutional grounds, arguing that it violates his fundamental rights "to choose a calling or profession", "to personal security" and his "right to privacy", the Fourth, Fifth and Ninth Amendments and the "penumbral guarantees." He contends that a heightened standard of review applies, in that public disclosure of his SSN isn't "necessary [for] a compelling governmental interest." Ferm also challenges § 110(c)(2) on equal protection grounds, arguing that it establishes a "class within a class" because

attorneys and their employees are also "document preparers" but aren't required to supply their SSNs. Finally, Ferm argues that § 110(c)(2) violates the Privacy Act.

### Legal Discussion

#### A. The Right To Privacy.

■ There is no "right of privacy" expressly guaranteed by the U.S. Constitution. *Grummett v. Rushen,* 779 F.2d 491 (9th Cir. 1985). The United States Supreme Court has recognized that "zones of privacy" may be created by specific constitutional guarantees which impose limits upon governmental power. *Grummett,* 779 F.2d at 491; *Paul v. Davis,* 424 U.S. 693, 712–13, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976).

■ Rights found in the "zones of privacy" are limited to those which are "fundamental" or "implicit in the concept of ordered liberty." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973) (citations omitted). The activities related to these "zones" pertain to the intimate facets of an individual's life in the areas of marriage, procreation, contraception, family relationships, child rearing and education. *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). "The Supreme Court has limited the constitutional right to privacy to interferences with a 'person's most basic decisions about family and parenthood ... as well as bodily integrity.'" *People of State of Calif. v. F.C.C.,* 75 F.3d 1350, 1361 (9th Cir. 1996), *citing, Planned Parenthood v. Casey,* 505 U.S. 833, 849, 112 S.Ct. 2791, 2806, 120 L.Ed.2d 674 (1992) (telephone number is not among the select privacy interests protected by a federal right to privacy).

The Ninth Circuit has held that the Constitution protects two types of privacy interests. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Doe v. Attorney Gen. of the United States,* 941 F.2d

---

**3.** The UST defines each of the following as a "document for filing" under 11 U.S.C. § 110: the petition, the summary of schedules, schedules A through J, the "Declaration Concerning Debtor's Schedules", the "Chapter 7 Individual Debtor's Statement of Intention", the "Statement of Financial Affairs", the "Statement of Assistance by Non–Attorney In Regards To Filing This Petition", and the "Statement of Assistance By Non–Attorney Re: Filing the Bankruptcy Petition."

780, 795 (9th Cir.1991), *citing, Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977).

█ Privacy interests which relate to disclosure of personal matters ("informational privacy") encompasses two areas. The first is the government's collection and storing of information about citizens. *See Whalen v. Roe,* 429 U.S. 589, 605, 97 S.Ct. 869, 879, 51 L.Ed.2d 64 (1977) (State recordation in a centralized computer file of the names and addresses of persons who have obtained certain drugs). The second area is the release of information to the public or another government agency (the "public dissemination of information"). *Nixon v. Adm'r of Gen. Serv.,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (disclosure of private papers concerning private communications between Nixon and his family and physician); *Doe v. Attorney Gen. of United States,* 941 F.2d 780 (9th Cir.1991) (disclosure of medical information); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3rd Cir.1980) (disclosure of medical records). Ferm complains about the public disclosure of his SSN, and thus his arguments relate to the second area.

█ A SSN is not within one of the "zones of privacy" recognized as "fundamental" or "implicit in the concept of ordered

liberty." *In re Turner,* 193 B.R. 548 (Bankr.N.D.Calif.1996) (disclosure of SSN by document preparer does not violate preparer's constitutional right to privacy). A SSN has nothing to do with a person's most basic decisions about family, parenthood, or bodily integrity. [M]andatory disclosure of "one's social security number does not so threaten the sanctity of individual privacy as to require constitutional protection."[4] *Doyle v. Wilson,* 529 F.Supp. 1343, 1348 (D.Del.1982). *See also McElrath v. Califano,* 615 F.2d 434, 441 (7th Cir.1980). Not every government disclosure of personal information invokes constitutional protection.[5] *See, e.g., See People of State of Calif. v. F.C.C.,* 75 F.3d 1350, 1361 (9th Cir.1996) (disclosure of telephone number is not protected by the federal constitution; it is "not among the select privacy interests protected by a federal constitutional right to privacy"), *citing, Planned Parenthood v. Casey,* 505 U.S. 833, 849, 112 S.Ct. 2791, 2805–06, 120 L.Ed.2d 674 (1992); *St. Michael's Convalescent v. State of Calif.,* 643 F.2d 1369 (9th Cir.1981) (health care provider's disclosure of cost information to public did not implicate a constitutional right of privacy).

██ Even where information involving a fundamental right is disclosed, however, pri-

4. The sources relied on by the Supreme Court or individual Justices for a right of privacy have included the Fourth and Fifth Amendments, *Terry v. Ohio,* 392 U.S. 1, 8–9, 88 S.Ct. 1868, 1873–74, 20 L.Ed.2d 889 (1968); *Katz v. United States,* 389 U.S. 347, 350, 88 S.Ct. 507, 510–11, 19 L.Ed.2d 576 (1967); *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886); the penumbra of the Bill of Rights, *Griswold v. Connecticut,* 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 and the Ninth Amendment, *id.* "These decisions make it clear that only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty' are included in this guarantee of personal privacy." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973).

Ferm argues that there is a right to be free from "compulsion to make public a social security number" which stems from the Fourth Amendment's prohibition against unreasonable searches and seizures and the Fifth Amendment's "concerns for the right of each individual to a private enclave where he may lead a private life." While the Supreme Court has acknowledged that the involuntary disclosure of private information can implicate Fourth Amendment

interests, *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); *Davis v. United States,* 328 U.S. 582, 587, 66 S.Ct. 1256, 1258, 90 L.Ed. 1453 (1946), it is unclear how § 110(c) compels disclosure. Ferm is under no compulsion to prepare documents for filing, and is free to refuse to do so. *See, Wyman v. James,* 400 U.S. 309, 317–18, 91 S.Ct. 381, 385–86, 27 L.Ed.2d 408 (1971) (home visitation as a condition for financial assistance is not a Fourth Amendment violation). Furthermore, the Supreme Court has limited the scope of Fifth Amendment protection to compelled self-incrimination, not the disclosure of private information. *Fisher v. United States,* 425 U.S. 391, 401, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976).

5. The Supreme Court has indicated an unwillingness to find new, privacy-type fundamental rights. *See Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (Court refused to expand list of fundamental rights to include right of juveniles to be released into a noncustodial setting); *Bowers v. Hardwick,* 478 U.S. 186, 195, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986) (advising against expanding the list of fundamental rights).

vacy protection is not absolute. The right of privacy is "a conditional right which may be infringed upon a showing of proper governmental interest." *Doe v. Attorney General of U.S.*, 941 F.2d 780, 796 (9th Cir.1991). In determining whether the government may seek or use private information, courts balance the government's interest in having or using the information against the individual's interest in denying access. *Id.* The factors which must be considered in reaching a fair balance of the competing interests include (1) the type of information requested; (2) the potential for harm in any subsequent nonconsensual disclosure; (3) the adequacy of safeguards to prevent unauthorized disclosure; (4) the degree of need for access; and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. *Id.*

▮▮▮▮ Applying these factors, overall, the balance weighs on the side of permitting the public disclosure of a document preparer's SSN under § 110. While there may be a risk that a SSN will be used fraudulently, the government's interest in policing widespread fraud and abuse by petition preparers outweighs the preparer's interest in denying public access to his SSN, and implicates no "fundamental" right.[6]

The need for public access to a document preparer's SSN is compelling, given the serious nature of the conduct to be prevented and the widespread corruption associated with document preparers. *See In re Turner*, 193 B.R. 548, 556 (Bankr.N.D.Calif.1996) (government has compelling interest in disclosure of petition preparer's SSN in order to police fraud and abuse by preparers); *Bowen v. Roy*, 476 U.S. 693, 709, 106 S.Ct. 2147, 2157, 90 L.Ed.2d 735 (1986) (prevention of fraud is compelling interest). Requiring public disclosure of SSNs furthers the public interest by identifying unscrupulous prepar-

ers and by detecting and tracking their activities in the bankruptcy system. Alternatives to public disclosure are inadequate in that § 110(c) is not amenable to the kind of "private disclosure" sought by Ferm. Use of an alternative number such as a local driver's license number, or private disclosure of a SSN to court personnel, would be less effective for tracking the identities of petition preparers in the nation-wide bankruptcy system.

Section 110(c) is an express statutory requirement that a petition preparer's SSN be placed upon the document prepared for filing. Section 110(c) was enacted to "address the growing problem of bankruptcy preparers who abuse the system" and "is intended to police fraud and abuse by such preparers." S.Rep. No. 168, 103d Cong., 1st Sess. 51 (1993). The legislative history describes § 110 as "critically needed to confront the large scale fraudulent conduct of [bankruptcy petition preparers] who prey on the poor and unsophisticated." 140 Cong.Rec. § 14, 597–98 (daily ed. October 7, 1994).

▮▮▮▮ Congress has prohibited the disclosure of SSNs in select areas. For example, the use and disclosure of SSNs by state and federal agencies is limited by statute, pursuant to 42 U.S.C. § 405(c)(2)(C). And 18 U.S.C. § 2721 prohibits a State department of motor vehicles from disclosing any personal information obtained by the department, which information includes a SSN under 18 U.S.C. § 2725(3). The Internal Revenue Code, pursuant to 26 U.S.C. § 7431, allows for damage claims against the United States for disclosure of "return information" with respect to a taxpayer.[7] And under 5 U.S.C. § 552(b)(6) (the Freedom of Information Act or "FOIA"), a government agency is permitted to withhold information in a personnel or medical file which would constitute a "clearly unwarranted invasion of personal privacy."[8]

---

**6.** The right to pursue a calling or profession is not a fundamental right. *Madarang v. Bermudes*, 889 F.2d 251, 253 (9th Cir.1989), *cert. denied*, 498 U.S. 814, 111 S.Ct. 54, 112 L.Ed.2d 29 (1990).

**7.** "Return information" includes a SSN under 26 U.S.C. §§ 6103(b)(2) and 6109(d).

**8.** The FOIA does not apply in this case. There is no "agency" here which has been asked to disclose a "personnel" or "medical file." In the context of the FOIA, SSNs have been withheld from disclosure where the public interest in "knowing what their government is up to" is outweighed by the privacy interest that would be harmed. *See Painting Indus. of Hawaii v. Dept.*

Congress has chosen not to enact legislation which permits document preparers to use an alternative to the SSN, and this Court should not limit disclosure where the statute calls for none. "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), *citing, Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

■■ Ferm's argument that his failure to comply with § 110 is due to "reasonable cause" is not persuasive.[9] "Reasonable cause" to violate a statutory requirement has been found in cases where the violation is unavoidable through no fault of the violator. *See, e.g.; United States v. Boyle*, 469 U.S. 241, 243 n. 1, 105 S.Ct. 687, 689 n. 1, 83 L.Ed.2d 622 (1985) (stating that the IRS has recognized that "reasonable cause" for untimely filing of tax return includes unavoidable postal delays, filing return at wrong office, serious illness of the taxpayer, etc.)

Here, Ferm's failure to comply with § 110 is not unavoidable through no fault of Ferm's. Instead, his failure to comply with § 110 is willful, in that it is based upon his stated belief that placing his SSN on documents leaves him vulnerable to SSN-related fraud. Congress has provided protection in this area, in that 42 U.S.C. § 408(a)(7)(B) makes it a crime to use another's SSN with the intent to deceive.

■■ Whether or not a right is "fundamental" determines the appropriate level of constitutional scrutiny in determining whether a statute infringes upon that right. If the statute significantly infringes upon a fundamental right, the justifications for the statute are strictly scrutinized. *Zablocki v. Redhail*,

434 U.S. 374, 383, 98 S.Ct. 673, 679, 54 L.Ed.2d 618 (1978); *Munoz v. Sullivan*, 930 F.2d 1400, 1404 (9th Cir.1991). Otherwise, a statute is analyzed under the highly deferential "rational basis" standard of review applicable to most economic and social legislation. *See Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 486–88, 75 S.Ct. 461, 463–65, 99 L.Ed. 563 (1955). Under that standard, the statute is constitutional if it bears a rational relationship to a legitimate state interest. *Jackson Water Works, Inc. v. Public Utilities Comm'n of State of California*, 793 F.2d 1090, 1093–94 (9th Cir.1986), *cert. denied*, 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 184 (1987). The party challenging the statute has the burden of proving that it is unconstitutional. *Jackson*, 793 F.2d at 1094. *See also, Jones v. Reagan*, 748 F.2d 1331 (9th Cir.1984) (legislation is presumed to be rational), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3505, 87 L.Ed.2d 636 (1985).

■■ Between these two extremes, an intermediate level of scrutiny applies when a right impinged is important though not protected by the Constitution. *See generally, City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440–42, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). Intermediate scrutiny is used to determine the validity of laws that classify according to gender and other criteria. *See, e.g., Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (gender); *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (alienage); *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) (illegitimacy). A law will be struck down under intermediate scrutiny unless it can be shown that it is substantially related to an important government purpose. *Stop H–3 Ass'n v. Dole*, 870 F.2d 1419, 1429 n. 20 (9th Cir.1989).

---

*of Air Force*, 26 F.3d 1479 (9th Cir.1994) (payroll information containing name, address, SSN, and rate of pay redacted where employee's privacy interests were not outweighed by public's interest); *Int'l Bhd of Elec. Workers Local Union No. 5 v. United States Dept. of Housing and Urban Dev.*, 852 F.2d 87, 89 (3rd Cir.1988) (release of SSN was unwarranted invasion of privacy where there was no countervailing public interest in disclosure). *Compare, Dobronski v. F.C.C.*, 17 F.3d 275 (9th Cir.1994) (sick leave slips which contained SSN were properly disclosed to public, where public interest in uncovering alleged abuse of public monies outweighed the "minimal" privacy interests involved).

**9.** Section 110 provides for fines against a petition preparer who fails to place his name, address, signature, and SSN on a "document for filing" unless the failure is due to "reasonable cause." "Reasonable cause" is not defined in the Code.

■ The public disclosure of a SSN does not involve a "fundamental" right, and thus strict scrutiny does not apply.[10] None of the constitutional guarantees of privacy in the recognized "zones of interest" bear any resemblance to the claimed constitutional right not to publicly disclose one's SSN. Ferm has argued no connection between family, marriage, procreation or bodily integrity on the one hand and disclosure of a SSN on the other.

An intermediate level of scrutiny has been applied in cases involving financial disclosure laws. Court have held that such laws which require officials and candidates for office to publicly disclose their assets, liabilities and other personal financial information implicate privacy concerns. *See, e.g., Barry v. City of New York,* 712 F.2d 1554 (2d Cir.1983); *Plante v. Gonzalez,* 575 F.2d 1119 (5th Cir. 1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). The majority of those courts have applied an intermediate level of scrutiny when such laws have been challenged. *Barry,* 712 F.2d at 1559.

Unlike financial disclosure laws, the disclosure of a SSN directly reveals nothing personal or private about its holder. Any disclosure of financial information is only potential, and can come about only through additional acts.

■ An intermediate level of scrutiny is only employed when "concerns sufficiently absolute and enduring can be clearly ascertained from Constitution and Supreme Court cases." *Stop H–3 Ass'n v. Dole,* 870 F.2d

1419, 1430 (9th Cir.1989), *quoting Plyler v. Doe,* 457 U.S. at 218 n. 16, 102 S.Ct. at 2395 n. 16. While disclosure of a SSN could leave an individual at some risk of injury due to the unauthorized use of the number,[11] this Court does not have to decide whether the public disclosure of a SSN entitles document preparers to something more than the minimal "rational basis" scrutiny. Even assuming, arguendo, that a purported right not to disclose a SSN is an important right giving rise to intermediate level of review, § 110(c) satisfies the requirements for that level of scrutiny.

Congress explained that the purpose of § 110(c) is to police fraud and abuse by petition preparers, and that it is "critically needed" to confront the large scale fraudulent conduct of those preparers "who prey on the poor and unsophisticated." 140 Cong. Rec. § 14, 597–98 (daily ed. October 7, 1995). Section 110 is substantially and directly related to the achievement of Congress' objective. The public disclosure of a document preparer's SSN is a legitimate means of furthering that objective in that it significantly helps the public identify unscrupulous preparers, and serves to deter and track their activities. The private disclosure of a SSN to court personnel would not assist the public in identifying unscrupulous document preparers.

■ Because § 110 would survive the intermediate level of scrutiny, it would a fortiorari be upheld under a "rational basis" review. Section 110(c) serves a legitimate

---

**10.** The Ninth Circuit, in the "informational privacy" cases of *Doe v. Attorney Gen. of the United States,* 941 F.2d 780, 797, 796 (9th Cir.1991) and *Thorne v. City of El Segundo,* 726 F.2d 459, 469–71 (9th Cir.1991), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984), applied a strict standard of review, holding that the government may seek and use information if it can show that its use would "advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest." *Doe v. Attorney General of the United States,* 941 F.2d 780, 796 (9th Cir.1991). "The more sensitive the information, the stronger the state's interest must be." *Id.* at 796. Arguably, the stricter standard of review was applied in *Doe* and in *Thorne* because of the nature of the interests at issue—the disclosure of medical information in *Doe,* 941 F.2d at 795, and "the core of rights protected by the constitution's

guarantees of privacy and free association—appellant's interest in family living arrangements, procreation and marriage" in *Thorne,* 726 F.2d at 469.

**11.** The sensitive nature of one's SSN has been recognized in *Greidinger v. Davis,* 988 F.2d 1344, 1354 (4th Cir.1993), which stated that "the harm that can be inflicted from the disclosure of a SSN to an unscrupulous individual is alarming and potentially ruinous." In *Greidinger,* a Virginia voter registration scheme required voters to supply their SSNs and permitted the voter list to be sold. The court held that the disclosure of a SSN created an intolerable burden on the fundamental right to vote. Unlike *Greidinger,* there is no fundamental right implicated in the case at bar.

governmental purpose, and is rationally related to the achievement of that purpose.

Accordingly, § 110(c) does not unconstitutionally invade Ferm's right of privacy. It serves a legitimate and important government purpose and is rationally and substantially related to the achievement of that purpose. Furthermore, the government's interest in disclosing the SSN outweighs Ferm's interest in denying such disclosure.

### B. *Equal Protection.*

■ Ferm contends that § 110(c) violates the equal protection clause. He argues that petition preparers are similarly situated to attorneys and their employees, and that § 110 "impermissibly discriminates against members of the same class."

■ The Due Process Clause of the Fifth Amendment, which is applicable to the federal government, incorporates the Fourteenth Amendment's right to equal protection. *United States v. Lopez–Flores,* 63 F.3d 1468, 1472 (9th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 794, 133 L.Ed.2d 743 (1996). Analysis of an equal protection claim alleging an improper statutory classification involves two steps. First, there must be a showing that the statute, either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group. *Id.* Ferm has established that element. Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the groups is justified. *Id.*

■ When the government utilizes a "suspect or quasi-suspect" classification or draws distinctions among individuals that bear on the exercise of a fundamental right, the challenged statute will be subject to heightened scrutiny. *Munoz v. Sullivan,* 930 F.2d 1400, 1404 (9th Cir.1991). Otherwise, the distinctions that the government draws among persons need only be rationally related to a legitimate governmental purpose. *Id.* Unless a statute employs a classification that is inherently invidious (such as race or gen-

der), or that impinges on fundamental rights, the court exercises only limited review. *Navarro v. Block,* 72 F.3d 712, 717 (9th Cir. 1995). Under the rational basis test, the burden of proof is on the party who is attempting to disprove the existence of a rational relationship between a statutory classification and a government objective. *McQueary v. Blodgett,* 924 F.2d 829 (9th Cir.1991).

■ There is no fundamental right not to publicly disclose a SSN. Nor is there any allegation that § 110(c) targets document preparers on the basis of any "suspect or quasi-suspect" classification. Thus, Ferm can state an equal protection challenge only if there is no legitimate grounds to support the classification.

The distinction between bankruptcy petition preparers and attorneys and their employees is neither arbitrary nor irrational. Attorneys are subject to malpractice actions, rules of ethical conduct, disciplinary proceedings and continuing legal education requirements. Bankruptcy petition preparers are not. Attorneys are also held responsible for their employees, such as secretaries, law clerks, and other assistants.

■ The government has a legitimate interest in the prevention of fraud perpetrated on the public by petition preparers. Requiring public disclosure of a petition preparer's SSN on the documents which they prepare is rationally related to that purpose. Thus, § 110(c) does not violate the Equal Protection Clause. Because the legislative classification here is supported by a rational basis, Ferm's equal protection challenge fails. *See Chambers v. Klein,* 419 F.Supp. 569, 583–84 (D.N.J.1976) (SSNs only required for children whose parents received federal aid, and not from other children whose parents did not receive aid, did not violate the equal protection clause), *aff'd,* 564 F.2d 89 (3rd Cir.1977). For the reasons discussed above, even if an intermediate level of scrutiny was applicable, § 110(c) serves an important governmental purpose in policing fraud and abuse by document preparers. Section 110 is substantially related to the achievement of that purpose, in that public disclosure of a

document preparer's SSN helps the public identify unscrupulous preparers, and serves to deter and track their activities.

### C. Privacy Act.

█ Disclosure of social security numbers is the subject of Section 7 of the Privacy Act of 1974, Public Law 93–579 ("Privacy Act"), which states that a government agency may not lawfully deprive any individual of a legal right, benefit or privilege because of such person's refusal to disclose his or her social security number.[12] Section 7 does not apply to "any disclosure which is required by Federal statute." Privacy Act § 7(a)(2)(A). Given that 11 U.S.C. § 110 is a federal statute which requires placing the SSN upon "documents for filing", the Privacy Act is inapplicable here.

### D. Penalty.

█ The fines provided for in § 110 apply to any "document for filing" prepared by a petition preparer. The UST argues that the summary of schedules, the declaration concerning debtor's schedules, and each schedule (A–J) is a separate "document for filing." Each relevant Advisory Committee Note to the 1995 amendment to the Official Forms state, however, that the schedules, the statement of financial affairs, and the "Chapter 7 Individual Debtor's Statement of Intention" are each a "document for filing." A petition is also a "document for filing" requiring a preparer's name, address, signature and SSN. See Advisory Committee Note to Official Form 1. Indeed, the Official Forms for the petition, the schedules, the statement of financial affairs, and the statement of intention have specific sections which provide space for the disclosure of the petition preparer's name, address, signature, and SSN.[13]

Accordingly, Ferm shall be fined $200 for each "document for filing" in violation of § 110(b)(1) which does not contain his name, address, and signature ($600).[14] Furthermore, Ferm shall be fined $100 for violation of § 110(c)(1) for each "document for filing" that does not have his SSN ($400).[15]

Ferm's total fine is $1,000, which shall be payable to Patricia Gray, Clerk of the Bankruptcy Court, Foley Federal Courthouse, 300 Las Vegas Boulevard South, Las Vegas, Nevada 89101, within sixty (60) days of the entry of this Order.

█ The UST's request that Ferm be ordered to disgorge his fee is denied, given that the UST presented no evidence that the fee was in excess of the value of the services provided. Furthermore, the UST's request that Ferm be found in contempt is denied, given that the prior order of August 30, 1995 prohibited Ferm from using an alternative number, and did not prohibit him from supplying his SSN to the intake supervisor only.

IT IS SO ORDERED.

12. Section 7 is an uncodified statute-at-large, which is found in the note to 5 U.S.C. § 522a (1977).

13. Pursuant to Fed.R.Bankr.P. 1007, a Chapter 7 debtor must file the schedules, statement of financial affairs and statement of intent "as prescribed by the appropriate Official Forms." Ferm has not filed the Official Forms.

14. Ferm signed and placed his name and address on the "Statement of Assistance By Non–Attorney Re: Filing The Bankruptcy Petition." Ferm failed to sign and place his name and address on the schedules, the statement of financial affairs, or the "Chapter 7 Individual Debtor's Statement of Intention."

15. Ferm failed to place his SSN on the petition, the schedules, the statement of financial affairs, and the "Chapter 7 Individual Debtor's Statement of Intention."