In re George ADAMS, Debtor.

Adele T. JETER, Appellant,

v.

**OFFICE OF THE UNITED STATES TRUSTEE, Appellee.**

BAP No. CC–96–1755–JMeMc.
Bankruptcy No. LA 96–16875–LF.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Submitted Without Oral Argument
March 19, 1997.

Decided Oct. 10, 1997.

Adele Jeter, Carson, CA, in Pro per.

Joseph E. Caceras, Office of the United States Trustee, Los Angeles, CA, for U.S. Trustee.

Before: JONES, MEYERS and McKEAG,[1] Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge.

### I

The main issue in this appeal is whether the requirement in Bankruptcy Code ("Code") Section 110(c), that a bankruptcy petition preparer place his or her social security number on bankruptcy documents, is unconstitutional.

We hold that it is not and **AFFIRM** the bankruptcy court.

### II

### FACTS

Adele T. Jeter ("Jeter") prepared a Chapter 7 bankruptcy petition, schedules and related documents on behalf of George Adams ("Adams"), who filed for bankruptcy relief on March 5, 1996.

On June 18, 1996, the Office of the United States Trustee ("U.S.Trustee") brought a motion for fines against Jeter and/or disgorgement of her fees. The United States Trustee alleged that Jeter violated Code Section 110 because she: (1) did not sign the bankruptcy petition or any documents filed therewith; (2) failed to place her social secu-

rity number on the petition or any related documents; and (3) did not file a declaration within 10 days of the filing disclosing the fee she received from the Debtor.

Jeter opposed the motion and the court heard the matter on July 10, 1996. At the conclusion of the hearing the court stated that it would fine Jeter in the amount of $500, but that the fine would be suspended if Jeter met and conferred with the U.S. Trustee within 30 days.

Jeter met and conferred with the U.S. Trustee on July 22, 1996. The court permanently suspended the fine against Jeter. Both the order imposing the fine and the order suspending the fine were entered on August 12, 1996. On August 7, 1996, Jeter filed a notice of appeal of the order imposing the fine.

### III

### STANDARD OF REVIEW

The issues of standing and mootness are legal issues subject to *de nova* review. *In re Spaulding Composites Co. Inc.*, 207 B.R. 899, 902 (9th Cir. BAP 1997). A challenge to the constitutionality of a statute also is reviewed *de novo*. *In re Kurth Ranch*, 986 F.2d 1308, 1310 (9th Cir., 1993), *aff'd*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

### IV

### DISCUSSION

A. *Whether We Have Jurisdiction*

 Jeter's notice of appeal, though filed five days before the order was entered, is timely. Under Fed.R.Bankr.P. 8002(a), a premature notice of appeal is treated as having been filed on the date the order was entered. *In re Travers*, 202 B.R. 624, 625 (9th Cir. BAP 1996).

 Another consideration, in light of the court's order permanently suspending the $500 fine against Jeter, is whether this appeal presents a case or controversy under

1. Hon. Jane Dickson McKeag, Bankruptcy Judge for the Eastern District of California, sitting by designation.

Article III of the Constitution. Specifically, we must determine whether the order suspending the fine abrogated Jeter's standing as an appellant or mooted her appeal. The principles of standing and mootness are interrelated. The personal stake required of the plaintiff at the commencement of litigation, under the doctrine of standing, must continue throughout its existence, under the mootness doctrine. *Arizonans for Official English v. Arizona,* —— U.S. ——, ——, 117 S.Ct. 1055, 1069, 137 L.Ed.2d 170 (1997).

▮ To establish jurisdiction, Jeter must demonstrate an actual or imminent invasion of a legally protected interest that is concrete and particularized. —— U.S. at ——, 117 S.Ct. at 1067. "The requirement of concreteness, however, does not in and of itself require that the plaintiff be the subject of some administrative or judicial proceeding at the time of suit. The Supreme Court has often upheld the grant of injunctive relief against laws before prosecution." *Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497, 500 (7th Cir. 1980). In *Entertainment Concepts,* an owner of an adult theater sought an injunction against the enforcement of two ordinances enacted by municipal officials. One ordinance required preapproval of businesses showing adult movies, while the other banned the exhibition of obscene motion pictures. The officials argued that the lack of any proceedings against the plaintiff at the time it filed suit rendered the case unripe for judicial review. The court disagreed. It held that the plaintiff could reasonably assert that it feared enforcement of the ordinances stemming from specific conduct on its part. The court determined that under those circumstances, the plaintiff need not expose itself to prosecution, risking closure of its theater, in order to challenge a statute which allegedly deterred its constitutional rights. *Id.*

▮ Here, Jeter is in the business of preparing bankruptcy petitions. She alleges that Code Section 110 deters the exercise of her constitutional rights. It is reasonable to assume that should she prepare another bankruptcy petition in violation of Section 110(c), she might face prosecution. Whether an appeal should be heard depends on the fitness of the issues for judicial determination and the hardship to the parties from withholding a decision. *In re Dominelli,* 788 F.2d 584, 585 (9th Cir.1986). To withhold a ruling at this point would leave Jeter unanswered questions as to her duties as a petition preparer, and put her at tangible risk of future fines. The merits of this case have been briefed, argued and decided in the bankruptcy court and briefed for our review. Asking the parties to appeal this issue at some future date would needlessly make them repeat their efforts. Jeter has asserted an imminent invasion of a legally protected interest that is concrete and particularized. We have jurisdiction to determine at this time whether Code Section 110(c) unconstitutionally infringes upon Jeter's interest in concealing her social security number.

B. *Whether We Should Reach the Constitutional Issues*

▮ Jeter contends that the requirement that she disclose her social security number violates her constitutional rights to privacy and equal protection. The United States Trustee counters that we should not reach this question. The fine against Jeter was based not only on her refusal to provide her social security number, but also on her failure to sign the bankruptcy petition or any related documents and her failure to timely file a declaration disclosing the compensation she received. The United States Trustee states that the fine may be upheld on one or both of these latter grounds, without discussing the constitutionality of requiring disclosure of social security numbers. "We avoid constitutional issues when resolution of such issues is not necessary for disposition of a case." *In re Snyder,* 472 U.S. 634, 642, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985).

But in this appeal we are not assessing the merits of the fine. Because Code Section 110(c) clearly directs bankruptcy petition preparers to reveal their social security numbers and because Jeter is in the business of preparing bankruptcy petitions, there is a real threat that she will be fined the next time she prepares a bankruptcy petition without disclosing her social security number. Jeter has asserted a threatened inva-

sion of her alleged constitutional rights that is concrete and particularized. Not wanting to make Jeter face another fine before she can litigate this issue, we have let the appeal proceed—not on the basis of whether the fine is reasonable, but on the issue of whether we should declare Section 110(c) unconstitutional. To resolve this issue we obviously must consider the constitutional questions.

## C. *Whether the Statute Violates Jeter's Right to Privacy*

First, Jeter asserts that her constitutional right to privacy is violated by the requirement that she disclose her social security number on the bankruptcy documents. This argument has been made in only two other cases and has been rejected in both. *In re Rausch*, 197 B.R. 109, 115 (Bankr.Nev.1996), *aff'd*, 213 B.R. 364 (D.Nev.1997) (hereinafter "*Rausch II*"); *In re Turner*, 193 B.R. 548, 553 (Bankr.N.D.Cal.1996).

▇ The constitutional right of privacy includes the interest in avoiding disclosure of personal matters. *Davis v. Bucher*, 853 F.2d 718, 719 (9th Cir. 1988). "Though often noted, this interest has been infrequently examined; as a result its contours remain less than. clear." *Id.* The Supreme Court appears "to be willing to limit governmental activity relating to the collection and distribution of data only when that activity impairs fundamental constitutional rights or constitutional restrictions on the criminal justice process." 3 Rotunda and Nowak, *Treatise on Constitutional Law* § 18.30, 380–81 (2d ed.1993). The Ninth Circuit Court of Appeals has held that the constitution protects only "select privacy interests." *People of State of Cal. v. F.C.C.*, 75 F.3d 1350, 1361 (9th Cir. 1996). The court narrowly restricted the constitutional right to privacy, stating that it protects individuals against interferences with their most basic decisions about family and parenthood and ·against interferences with bodily integrity. *Id.*

In that case, the court held that the right to privacy does not prohibit exposure of unlisted telephone numbers through "Caller ID" service. It stated: "A phone number is not among the select privacy interests protected by a federal constitutional right to privacy." *Id.* In contrast, in *Doe v. Attorney General of U.S.*, 941 F.2d 780, 796 (9th Cir. 1991), the court recognized that "information regarding an individual's HIV-status or AIDS diagnosis would fall within the ambit of the privacy protection afforded medical information."

▇ We do not find a protected privacy interest in the case at hand. In analyzing the constitutional rights, we find a social security number more akin to a telephone number than to a diagnosis of HIV or AIDS. Requiring petition preparers to reveal their social security number on court documents does not interfere with their most basic decisions about family and parenthood or with their bodily integrity.

Courts must be circumspect in expanding the substantive reach of the Due Process Clause, particularly if to do so would redefine the category of rights considered fundamental. *Davis v. Bucher, supra*, 853 F.2d at 720. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court rejected a claim that publication of the plaintiff's arrest violated his constitutional right to privacy. The Court defined the right to privacy as a limit on the government's power to substantively regulate conduct relating to marriage, procreation, contraception, family relationships and child rearing and education. 424 U.S. at 713, 96 S.Ct. at 1166. The Court stated:

> Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.

*Id.*

We agree with the courts in *Rausch, supra*, 197 B.R. at 115, *Rausch II* and *Turner, supra*, 193 B.R. at 553. Concealment of one's social security number should not be

categorized as one of those rights considered fundamental and thereby deserving of constitutional protection. "Courts addressing the issue of privacy and [social security numbers] have found that there is no fundamental privacy right prohibiting disclosure." *Rausch II, supra.* We reject Jeter's argument that Code Section 110(c) violates her constitutional right to privacy.

We recognize that there are no administrative or statutory safeguards against the public dissemination of a petition preparer's social security number. In rejecting claims of unconstitutional violations of privacy in *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), and *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Supreme Court noted that the statutes at issue contained measures preventing undue dissemination of private information. Yet we do not think that such safeguards are the *sine qua non* for constitutionality. In fact, the Supreme Court in *Whalen v. Roe* refused to decide whether it would uphold a statute without such safeguards. 429 U.S. at 605–06, 97 S.Ct. at 879 ("We ... need not, and do not, decide any question which might be presented by ... a system that did not contain comparable security provisions").

If Jeter does not want to reveal her social security number, she could decline to prepare bankruptcy petitions. In contrast, the plaintiffs in *Whalen* and *Nixon* had much less choice concerning compliance with the relevant statutes. In *Whalen,* the Court upheld a law requiring physicians to record with the State of New York the name, address and age of a patient using certain drug prescriptions, the dispensing pharmacy, the drug and the dosage. The law was upheld even though the Court recognized that the law had caused some people to refuse needed medication. 429 U.S. at 602–03, 97 S.Ct. at 877–78. In *Nixon,* the Court upheld a law requiring disclosure of all tape recordings involving the former President or made at the White House. This law was enacted after the recordings were made. Consequently, unless he was clairvoyant, President Nixon could not have avoided the intrusion on his privacy.

In order to enjoy the valuable privilege of discharging liabilities, a debtor must comply with Fed.R.Bankr.P. 1005 and disclose his or her social security number on the bankruptcy petition. Jeter's option to decline to prepare bankruptcy petitions should not be considered a disruption of a fundamental right. The burden of Code Section 110(c) is not of constitutional dimension.

Jeter suggests that a federal tax identification number could be used in lieu of a social security number. We will not weigh the merits of this proposal, because it is not the law. "[L]egislation which has some effect on individual liberty or privacy may not be held unconstitutional simply because a court finds it unnecessary, in whole or in part." *Whalen v. Roe, supra,* 429 U.S. at 597, 97 S.Ct. at 875. Congress has not enacted legislation which permits document preparers to use an alternative to the social security number; we will not limit disclosure where the statute calls for none. *Rausch, supra,* 197 B.R. at 117. Where the language of a statute is plain, the court's sole function is enforcement of the statute according to its terms. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

### D. *Whether Jeter Was Denied Equal Protection*

Jeter also complains that she was denied equal protection, because bankruptcy trustees and debtors' attorneys are not required to use their social security numbers when documenting public records. We note initially that Jeter has not alleged that Section 110(c) targets document preparers on the basis of any suspect or quasi-suspect classification. *See Rausch, supra,* 197 B.R. at 119.

The Equal Protection Clause of the Fourteenth Amendment does not apply to federal statutes. "To the extent that an equal protection claim can be raised against a federal statute, it is only through the equal protection component to the Fifth Amendment's due process clause and merges into the due process analysis generally." *In re Kroeger Properties and Development, Inc.,* 57 B.R. 821, 823 (9th Cir. BAP 1986). How-

ever, claims of a violation of the equal protection component of the fifth amendment's due process clause are analyzed the same as fourteenth amendment equal protection claims. *Alcaraz v. Block,* 746 F.2d 593, 604 (9th Cir. 1984).

■ Unless a statute uses a classification scheme that is inherently invidious, such as race or gender, or that impinges on fundamental rights, the court reviews the statute only to determine if there is a rational relation between the classification and legitimate governmental objectives. *Navarro v. Block,* 72 F.3d 712, 717 (9th Cir. 1995).

■ Section 110(c) does not classify as to race or gender. And in analyzing whether the statute violated the constitutional right to privacy, we determined that it did not impinge on fundamental rights. We also note that for purposes of the Equal Protection Clause the right to pursue a calling or profession (e.g., as a bankruptcy petition preparer) is not a fundamental right. *Madarang v. Bermudes,* 889 F.2d 251, 253 (9th Cir. 1989). Because Section 110(c) does not employ an inherently invidious classification scheme or impinge on fundamental rights, we need only determine if there is a rational relation between the classification and legitimate governmental objectives.

In the somewhat analogous case of *Alcaraz v. Block, supra,* 746 F.2d at 605, the court found that requiring applicants of federal school lunch programs to provide their social security numbers was reasonably related to a legitimate governmental purpose: preventing fraud and misallocation of taxpayers' money in entitlement programs.

Code Section 110 also was enacted to prevent fraud. The legislative history provides that Section 110 is "critically needed ... to confront the large scale fraudulent conduct of those who prey on the poor and unsophisticated." 140 Cong.Rec. § 14597 (Oct. 7, 1994). Section 110 was established to regulate abuses by non-lawyer petition preparers. *In re Fraga,* 210 B.R. 812, 816–17 (9th Cir. BAP 1997). "The purpose behind the law was to identify petition preparers and protect debtors from preparers who lacked legal training and ethics regulation, and to protect them from those who may take unfair advantage of debtors unfamiliar with the bankruptcy system." *Rausch II, supra.*

Regulation was and is sorely needed. Many bankruptcy paralegals, who are not specially trained in the complex procedural and substantive areas of bankruptcy law, continue to give improper legal advice. "Such advice often causes harm to the unwary consumer." M. Testerman, *Bankruptcy Paralegal Regulation and the Bankruptcy Reform Act of 1994: Legitimate Legal Assistance Options for the Pro Se Bankruptcy Debtor,* 23 Cal. Bankr.J. 37, 37 (1996). "[B]adly assisted pro se debtors place a day-to-day administrative burden on the courts, Chapter 7 trustees, and the United States Trustee's office." 23 Cal. Bankruptcy J. at 38.

Jeter's complaint that bankruptcy trustees and debtors' attorneys are not required to disclose their social security numbers is not well taken.

> The distinction between bankruptcy petition preparers and attorneys and their employees is neither arbitrary nor irrational. Attorneys are subject to malpractice actions, rules of ethical conduct, disciplinary proceedings and continuing legal education requirements. Bankruptcy petition preparers are not. Attorneys are also held responsible for their employees, such as secretaries, law clerks, and other assistants.

*Rausch, supra,* 197 B.R. at 119. The Bankruptcy Code and Rules, e.g., Code Section 329 and Fed.R.Bankr.P.2016(b), contain ample provisions to protect consumers from abuses by lawyers. *Fraga, supra,* 210 B.R. at 819. In addition, bankruptcy trustees are significantly regulated. They are supervised by the Office of the United States Trustee, 28 U.S.C. § 586, they must post a bond before serving in a case, Code Section 322, they must be judged competent to perform, Code Section 321, and may be removed for cause, Code Section 324. Especially in light of the regulation of bankruptcy trustees and attorneys, Section 110's purpose of preventing abuse by non-lawyer petition preparers is a legitimate one. Jeter has not been denied equal protection.

**V**

**CONCLUSION**

We hold that Code Section 110(c) does not violate Jeter's constitutional rights to privacy and equal protection.

**AFFIRMED.**