**In re Vernon Floyd and Carol Grenier TURNER, Debtors.**

**Bankruptcy No. 95–3 1873 WDM.**

United States Bankruptcy Court,
N.D. California.

March 11, 1996.

Minnie Loo, Office of U.S. Trustee, San Francisco, CA.

Jim Snyder, Tehachapi, CA, in pro. per.

## MEMORANDUM DECISION

DENNIS MONTALI, Bankruptcy Judge.

### I. *INTRODUCTION*

On January 22, 1996, a hearing was held on the United States Trustee's ("UST") motion for order to have Jim Snyder ("Snyder") show cause why (1) his fees should not be reviewed pursuant to 11 U.S.C. § 110(h)[1]; and (2) he should not be fined for violation of § 110(c). Minnie Loo, Esq. appeared for the UST and Snyder appeared in propria persona.

██ This is a core proceeding under 28 U.S.C. § 157. A proceeding is core if it is created by Title 11 or only arises in Title 11 cases. *In re Eastport Associates,* 935 F.2d 1071, 1077 (9th Cir.1991). The UST's motion is made pursuant to § 110 and involves obligations created only by that statute.

For the reasons stated below, Snyder's fees will be reduced from $450 to $150, and he will be ordered to pay a fine of $150 for his violations of § 110(c).

### II. *FACTUAL BACKGROUND* [2]

The facts are not in dispute. Vernon Floyd and Carol Grenier Turner ("Debtors")

filed a voluntary Chapter 7 petition on May 22, 1995. At that time Debtors were not represented by an attorney. Debtors paid $450 to Snyder for assistance in filing the petition. Snyder is a "bankruptcy petition preparer" within the meaning of § 110(a)(1).[3] According to Snyder, he charges between $60 and $80 per hour for typing, secretarial, paralegal and interviewing services. On at least eleven documents, each of which constitutes a "document for filing" within the meaning of § 110(a)(2), Snyder failed to subscribe his social security number ("SSN") pursuant to § 110(c)(2). Instead, Snyder used "000000000" as his identifying number.

Snyder purports to believe that the SSN and "government imposed numbers" in general are the "mark of the beast" described in the New Testament Book of Revelations.[4] He thus is forbidden by his Christian belief from using an SSN. Although at one time Snyder had an SSN, he claims to have renounced it in 1974 when he learned of the religious and spiritual significance of the "mark." Snyder also seems to associate the SSN with the federal government and a kind of amorphous threat and evil embodied in it. He has expressed concern that use of an SSN may implicate him as a "federal citizen" and may result in a loss of his rights.

### III. *ISSUES*

The UST contends that Snyder's fees are "in excess of the value of services rendered for the documents prepared" and should be accordingly reduced and the excess remitted to the bankruptcy estate as per § 110(h)(2). The UST further contends that Snyder, by failing to subscribe his SSN on documents for filing, should be fined pursuant to § 110(c).

---

1. Except where otherwise noted, all section references that follow are to the Bankruptcy Code, 11 U.S.C. §§ 110–1330.

2. The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R.Bankr.P. 7052(a).

3. Section 110(a)(1) defines a bankruptcy petition preparer as "... a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." § 110(a)(2) defines a "document for filing" as a

petition or document prepared for filing by a debtor in a United States bankruptcy court.

4. *See generally Callahan v. Woods,* 658 F.2d 679, 682 (9th Cir.1984) (*"Callahan I"*) (refusal to supply welfare agency with SSN and subsequent constitutional challenge based on "mark of the beast" theology); *Stevens v. Berger,* 428 F.Supp. 896, 901–02 (E.D.N.Y.1977) (thorough analysis of "mark of the beast" theology in context of free exercise challenge).

Snyder contends that his fee is not excessive. He also contends that (1) § 110(c) only imposes a fine for failure to subscribe an "identifying number" which is not necessarily the preparer's SSN, and that he did subscribe an identifying number; (2) fining him for failure to subscribe his SSN violates his constitutional right to privacy; and (3) fining him for failure to subscribe his SSN violates his constitutional right to the free exercise of religion.

The court, sua sponte, has inquired into the possible ramifications of § 110 on Snyder's statutory rights under Section 7 of the Privacy Act of 1974 and the Religious Freedom Restoration Act of 1993.

## IV. *DISCUSSION*

### A. *Snyder's Fees Are Excessive*

 Section 110(h)[5] authorizes the court to disallow any excess fees paid to a preparer and to order the preparer to turn over such excess fees. This section is analogous to § 329(b), applicable to attorneys. The excessiveness or reasonableness of fees "is a question of fact to be determined by the particular circumstances of each case." 2 Collier on Bankruptcy ("Collier") ¶ 329.04 (collecting cases under § 329(b)).

 Snyder's fee of $450 is unreasonable and excessive based on the amount of work done (eleven documents prepared) and the nature of that work (primarily typing). *See* Collier ¶ 110.09 (collecting cases reducing, under § 110(h), fees charged in excess of about $50 to $100). Based on the extent of Snyder's work for the Debtors, the quality of which is not challenged by the UST, and

given the specifics of the Debtors' case, the court determines $150 to be a reasonable fee.[6]

### B. *Required Use of Social Security Number Under § 110(c)*

 Section 110(c)[7] requires a bankruptcy petition preparer to subscribe his or her SSN to "document[s] for filing." Collier ¶ 110.03. Subsection (c)(1) *requires* an identifying number; subsection (c)(2) *defines* the identifying number as the preparer's SSN; subsection (c)(3) *imposes a fine* for failure to comply with subsection (c)(1). Snyder argues that since a fine is imposed only for violation of subsection (c)(1) and since subsection (c)(1) mentions nothing about an SSN, he cannot be fined for failing to use his SSN. Snyder's reading would emasculate subsection (c)(2) despite its mandatory language, and ignores the plain meaning of § 110(c) as a whole and the "settled rule that a statute must, if possible, be construed in such a fashion that every word has some operative effect." *U.S. v. Nordic Village,* 503 U.S. 30, 35, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992).

Snyder failed to subscribe his SSN on any document he prepared on behalf of Debtors. He filed eleven such documents. Because § 110(c) requires subscription of a preparer's SSN, Snyder may be required to pay a fine unless his failure is excused for reasonable cause.

### C. *Section 110(c) Does Not Violate Snyder's Constitutional Right to Privacy*

 "The Supreme Court has limited the constitutional right to privacy to interfer-

---

5. Section 110(h) provides, in part, as follows:
 (2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee [charged by the bankruptcy petition preparer] found to be in excess of the value of the services rendered for the documents prepared.

6. After the hearing on this matter, the United States Bankruptcy Court for the Northern District of California issued "Bankruptcy Petition Preparer Guidelines" pursuant to the Bankruptcy Local Rules of this district. Those Guidelines limit a bankruptcy petition preparer's fees to $125.00. Because this matter arose before the issuance of the Guidelines, the Court will not reduce Snyder's fee further.

7. Section 110(c) provides as follows:
 (1) A bankruptcy petition preparer who prepares a document for filing shall place on the document ... an identifying number that identifies individuals who prepared the document.
 (2) For purposes of this section, the identifying number shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.
 (3) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

ences with a person's most basic decisions about family and parenthood ... as well as bodily integrity." *California v. Federal Communications Commission,* 75 F.3d 1350, 1361 (9th Cir.1996) (internal quotations omitted). "The constitutional right to privacy embodies only those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.' " *McElrath v. Califano,* 615 F.2d 434, 441 (7th Cir.1980) (quoting *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973)).

■ The § 110(c) requirement that Snyder disclose his SSN on documents for filing does not violate his constitutional right to privacy. "[M]andatory disclosure of one's social security number does not so threaten the sanctity of individual privacy as to require constitutional protection." *Doyle v. Wilson,* 529 F.Supp. 1343, 1348 (D.C.Del. 1982). *See also California v. FCC,* 75 F.3d 1350, 1361 (no privacy right to protection from disclosure of telephone numbers via caller identification services); *McElrath* 615 F.2d at 441 (privacy rights not violated where mother must disclose SSNs of her children in order to receive welfare benefits); *Doe v. Sharp,* 491 F.Supp. 346, 350 (D.Mass. 1980) (same). Snyder's interest here is seemingly even less "fundamental" or "implicit in the concept of ordered liberty" than were the interests of the plaintiff mothers in *McElrath* or *Sharp,* so requiring him to disclose his SSN in this context does not violate his constitutional right to privacy.

### D. Section 110(c) Does Not Violate The Privacy Act of 1974

■ The Privacy Act of 1974, Pub.L. 93–579, § 7, 88 Stat. 1996, 1909, codified at 5 U.S.C. § 552a, note ("Privacy Act") makes it unlawful for any "government agency to deny to any individual any right, benefit or privilege ... because of such individual's refusal to disclose his" SSN.[8] Privacy Act § 7(a)(1). But this proviso does not apply to

"any disclosure which is required by Federal statute." Privacy Act § 7(a)(2)(A). Bankruptcy Code § 110(c), a federal statute, requires disclosure of a petition preparer's SSN, thus rendering the prohibition in § 7(a) of the Privacy Act inapplicable here.

■ Section 7(b) of the Privacy Act does require that any "government agency which requests an individual to disclose his" SSN must "inform [the] individual whether ... disclosure is mandatory ..., by what statutory ... authority such number is solicited, and what uses will be made of it." At least one commentator has suggested that this last requirement of § 7 of the Privacy Act may apply to § 110(c). Collier ¶ 110.03. However, even assuming the UST or the clerk of the bankruptcy court were agencies for purposes of the statute, no "request" has been made for Snyder's SSN. Instead, through § 110(c), Congress has directed that bankruptcy petition preparers subscribe their SSN's on documents for filing. The UST is enforcing a Congressional directive, not "requesting" anyone's SSN. The clerk receives documents for filing but does not police their content or form or request that certain information be included.[9] Section 7(b) of the Privacy Act is thus inapplicable. Snyder's rights under § 7 of the Privacy Act are not violated by § 110(c).

### E. Section 110(c) Does Not Violate Snyder's Constitutional Right to the Free Exercise of Religion

■ The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const., Amdt. 1. The First Amendment thus prohibits governmental regulation of religious beliefs as such; compelled affirmation of religious belief; punishment of expressions of religious doctrine it believes to be false; or imposition of

---

8. Snyder did not contend that § 110(c) violates § 7 of the Privacy Act and he could be held to have waived any protection it might offer. The court nevertheless inquires into this issue *sua sponte* in the interest of analyzing defenses Snyder or other bankruptcy petition preparers might raise in future cases.

9. The court's Bankruptcy Petition Preparer Guidelines (see fn. 6, *supra* ) require a bankruptcy petition preparer to sign and file a document that calls for the preparer's SSN. Again, this requirement is not a "request," but the carrying out of the directive of the Congress.

special disabilities based on religious status or views. *Employment Division v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876 (1990). But the Free Exercise clause does not

> relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)

*Id.* at 879, 110 S.Ct. at 1600 (quoting *United States v. Lee,* 455 U.S. 252, 263, n. 3, 102 S.Ct. 1051, 1058 n. 3, 71 L.Ed.2d 127 (1982)). Thus Oregon could, consistent with the First Amendment, deny Native Americans unemployment benefits for work related misconduct based on the religious but illegal use of peyote. *Id.* at 890, 110 S.Ct. at 1606.

▆▆▆▆ Snyder's First Amendment right to the free exercise of religion is not violated by the § 110(c) requirement that he subscribe his SSN. Section 110(c) is valid, neutral and of general applicability. It does not seek to regulate religion as such or to have any special effect on religion at all and it applies to any non-attorney who would prepare bankruptcy petitions. Snyder is attempting to be relieved of the obligation to comply with § 110(c) on the ground that it "prescribes ... conduct [use of his SSN] that his religion ... proscribes...." *Id.* at 880, 110 S.Ct. at 1600. *See also Bowen v. Roy,* 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) (plurality opinion) (required disclosure of SSN in order to get welfare benefits is neutral and of general applicability; free exercise clause does not prohibit such requirement).

Some of the language in § 110(c) might seem to take it out of the *Smith* ambit and subject it to a higher level of scrutiny. Section 110(c)(3) provides that failure to subscribe an SSN will subject the preparer to fines "unless the failure is due to reasonable cause." Where the government agency "has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without a compelling reason." *Smith,* 494 U.S. at 884, 110

S.Ct. at 1603; *Bowen,* 476 U.S. at 708, 106 S.Ct. at 2156 (plurality opinion). But the "reasonable cause" language of § 110(c) does not cause the statute to rise to the level of a "system of personalized exemptions." *Cf. Smith,* 494 U.S. at 884, 110 S.Ct. at 1603 (system of individual exemptions mandating use of strict scrutiny standard exists where "[unemployment compensation] eligibility criteria invite consideration of the particular circumstances ..." or "personal reasons") (discussing *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)). Section 110(c) does not require, suggest or invite a prospective inquiry into personal reasons in such a way as did the statute regarding unemployment benefits at issue in *Sherbert.* Thus § 110(c) is neutral and does not infringe on Snyder's right to the free exercise of religion under the Constitution. A contrary conclusion would only mandate that § 110(c) be subjected to the same analysis applied anyway in part F, *infra. Smith,* 494 U.S. at 884, 110 S.Ct. at 1603.

### F. Section 110(c) Does Not Violate Snyder's Rights Under The Religious Freedom Restoration Act of 1993

▆▆▆▆ Congress passed the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb through 2000bb–4, ("RFRA"), specifically in response to *Smith* (which is mentioned in the statute). Congress plainly wished to give back what *Smith* had taken away ("strict scrutiny" for neutral laws that burden the free exercise of an individual's religion).[10] 42 U.S.C. § 2000bb(a)(4), (b)(1). The RFRA applies retroactively and subsequently passed Federal legislation must specifically mention RFRA by name to be exempted. 42 U.S.C. § 2000bb–3(a), (c). Bankruptcy Code section 110 fails to exempt itself. RFRA revives the pre-*Smith* test and case law. 42 U.S.C. § 2000bb(b)(1). It provides that the "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person ... is in furtherance of a compelling governmental interest [and] is

---

10. Snyder did not contend that § 110(c) violates the RFRA and could be held to have waived any protection it might offer. The court nevertheless inquires into this issue sua sponte in the interest of analyzing defenses Snyder or other bankruptcy petition preparers might raise in future cases.

the least restrictive means of furthering that ... interest." 42 U.S.C. § 2000bb–1(b). *See also Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Sherbert,* 374 U.S. 398, 83 S.Ct. 1790.

 Under the test imposed by the RFRA, as outlined in pre-*Smith* case law, the claimant must show a sincerely held religious belief that is substantially burdened by the statute at issue; the government must then demonstrate a compelling governmental interest justifying the burden imposed and that the statute as applied is the least restrictive means of protecting that interest. *Callahan v. Woods,* 736 F.2d 1269, 1273 (9th Cir.1984) ("*Callahan II*").

 Snyder has come forward with at least a prima facie showing as to the sincerity of his beliefs. "Mark of the beast-" type theology has been recognized in many cases. *See e.g. Callahan I,* 658 F.2d 679. In any event, the relevant inquiry is not into the typicality or reasonableness of Snyder's belief but into its sincerity. A belief may be rooted only partly in religion; protection should still be accorded. *Id.* The sincerity of Snyder's beliefs has not been contested.

 In order to implicate the Free Exercise Clause and the RFRA, Snyder must show that § 110(c) substantially burdens his free exercise of religion. The case is not close. *Cf. Callahan II,* 736 F.2d 1269 (requirement that SSN be obtained and disclosed in order to receive welfare is substantial burden for "mark of the beast" believer); *Leahy v. Dist. of Columbia,* 833 F.2d 1046 (C.A.D.C.1987) (requirement that SSN be obtained and disclosed in order to receive driver's license is substantial burden for "mark of the beast" believer). These cases can be distinguished: the privilege of being a bankruptcy petition preparer is far less fundamental than the near-rights at issue in *Callahan II* or *Leahy.* The situation here is more like *Khalsa v. Weinberger,* 779 F.2d 1393, 1399 (9th Cir.1985) (in determining reviewability of Army regulations, the court made a preliminary assessment of potential injury to Sikh who could not comply with military's dress requirements, concluding that his religious beliefs were not substantially burdened

when he was prohibited from enlisting; plaintiff had right to dress as he wished, not right to enlist). *See also Bob Jones University v. U.S.,* 461 U.S. 574, 603–604, 103 S.Ct. 2017, 2035, 76 L.Ed.2d 157 (1983) ("[d]enial of tax benefits will inevitably have a substantial impact on the operation of schools, but will not prevent those schools from observing their religious tenets"); *Fordham University v. Brown,* 856 F.Supp. 684 (D.D.C.1994) (government's failure to subsidize broadcast of religious mass by radio station was not burden, much less substantial burden, for purposes of free exercise of religion; broadcaster could and did broadcast mass even without funding); *cf. Sherwood v. Brown,* 619 F.2d 47 (9th Cir.1980) (although court concluded, without discussion, that Sikh who could not comply with military dress code was burdened, government had compelling interest in enforcing dress code and implementing regulation was the least restrictive means). The fact that Snyder must provide his SSN if he wants to prepare bankruptcy petitions simply does not rise to the level of a substantial burden on his free exercise of religion and so the RFRA does not prevent Snyder from being fined for his violations of § 110(c).

The UST did not put on evidence at the hearing regarding the sincerity of Snyder's belief, the compelling governmental interest involved (although that can be found quite clearly in the legislative history of § 110(c)), or the question of whether the statute involved is the least restrictive means of addressing that interest. Since Snyder is not substantially burdened by § 110(c) the questions as to compelling interest and least restrictive means need not be reached. Nonetheless, the court would find that § 110(c) is supported by a compelling government interest and is probably the least restrictive means of protecting that interest.

 Even assuming Snyder's sincerely held religious belief would be substantially burdened by fining him, a compelling governmental interest justifying the burden imposed can be seen quite clearly. The legislative record is rife with description of "the large scale fraudulent conduct of [bankruptcy petition preparers] who prey on the poor and

**556**

unsophisticated." 140 Cong.Rec. S14, 597–98 (daily ed. October 7, 1994). Bankruptcy Code section 110 was "designed to address the growing problem of bankruptcy preparers who abuse the system" and "is intended to police fraud and abuse by such preparers." S.Rep. No. 103–168, 103d Cong., 1st Sess. 51 (1993) U.S.Code Cong. & Admin.News 1994, p. 3340. The compelling government interest seems indisputable. *See Bowen,* 476 U.S. at 709, 106 S.Ct. at 2157 (plurality opinion) (prevention of fraud is compelling interest). Government interest is often found to be insurmountably compelling when it comes to the tax system, criminal laws, the military and prisons. *See e.g. U.S. v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (social security taxes); *Olsen v. Iowa,* 808 F.2d 652 (8th Cir.1986) (narcotics laws); *Sherwood,* 619 F.2d 47 (military dress code).

 Section 110(c) would appear to be the least restrictive way of cracking down on unscrupulous preparers, even when considered in light of the *Callahan II* court's direction to consider "the extent to which recognition of an exemption ... would impede the objectives sought to be advanced by the state." *Callahan II,* 736 F.2d at 1273. This is so despite the "reasonable cause" language in § 110(c) itself. *See Lee,* 455 U.S. 252, 102 S.Ct. 1051 (fact that Congress allowed exemption for self employed from social security system did not indicate that failure to provide exemptions for employers and employees was not the least restrictive means of achieving compelling government interest); *Cf. Sherbert,* 374 U.S. at 410, 83 S.Ct. at 1792. The nefarious nature of the conduct to be prevented and the widespread corruption evident in preparers as a class (as evidenced in the legislative history) shows that § 110(c) is not amenable to the kind of exemption requested by Snyder.[11] *See Olsen,* 808 F.2d 652 (narcotics law was least restrictive means of protecting compelling government interest and was not amenable to exemption for religious marijuana use by members of Ethiopian Zion Coptic Church).

Possible substitutes for an SSN seem unsatisfactory. The local nature of a driver's license, for example, makes its use inappropriate for tracking the activities of petition preparers in the nation-wide bankruptcy system. Further, anyone can use Snyder's chosen nine zeros whereas it is a crime to use another's SSN with the intent to deceive. 42 U.S.C. § 408(g)(2). Moreover, Snyder's number is not tied to him in any particular way. He adopted it himself and would seemingly be free to adopt other numbers as well. Thus, requiring the use of an SSN seems to be the least restrictive way of implementing the compelling Congressional interest in policing the widespread fraud and abuse by bankruptcy petition preparers.

## V. *DISPOSITION*

 Because his violation of § 110(c)(1) is not excused, Snyder will be ordered to pay a fine of $150. Section 110(c) authorizes the Court to fine a bankruptcy petition preparer not more than $500 for each failure to subscribe his or her SSN to a document for filing; Snyder prepared eleven such documents. Nevertheless, in light of the novelty of § 110, Snyder's seemingly sincerely held beliefs and the fact that Snyder made some minimal effort to comply with § 110(c), the Court finds that $150 is a sufficient fine to alert Snyder to the importance of § 110(c) and to deter any future failure to subscribe his SSN to any documents which he may wish to prepare on behalf of bankruptcy debtors. Future violations, by Snyder or others, will not be treated so mildly.

Additionally, Snyder's fee will be reduced from $450 to $150 pursuant to § 110(h) and Snyder will be accordingly ordered to make payment to the Chapter 7 Trustee in the sum of $300.

A separate order consistent this Memorandum Decision is being entered herewith.

---

**11.** The court intends no inference that Snyder has acted in some inappropriate manner in rendering his services to Debtors or any other persons for whom he has prepared bankruptcy papers.