**In re Gretel A. HARTMAN, Debtor.**

**J. Christopher MARSHALL, United States Trustee, Plaintiff,**

v.

**Lee BOURQUE and Credit and Debt Consulting of America, Defendants.**

**Bankruptcy No. 96–14873–JNF.**
**Adversary No. 96–1472.**

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

April 30, 1997.

Jacqueline Walsh, Boston, MA, for U.S. Trustee.

Gary Cruickshank, Boston, MA, for defendants.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the adversary "Complaint for Injunction, Imposition of Fines, and Disgorgement of Fees Pursuant to 11 U.S.C. § 110 and for an Injunction Prohibiting the Unauthorized Practice of Law" (the "Complaint") filed by the United States Trustee (the "U.S. Trustee") against the Defendant, Lee Bourque ("Bourque" or the "Defendant"). Bourque does business as a sole proprietorship known as Credit and Debt Consulting of America ("CDCA"). The U.S. Trustee alleged in the Complaint that Bourque is a bankruptcy petition preparer within the meaning of 11 U.S.C. § 110 and that Bourque violated numerous subsections of § 110. The U.S. Trustee sought civil penalties and injunctive relief against the Defendant. The Defendant, though his attorney, filed an Answer through which he admitted that he was a petition preparer and had violated § 110. However, Bourque contested the imposition of civil penalties pursuant to the statute, although he did not assert any affirmative defenses. This adversary proceeding is a core matter under 28 U.S.C. § 157(b)(2)(A).

On September 26, 1996, the Court issued a Pretrial Order, which, among other things, set deadlines for discovery and the filing of a Joint Pretrial Memorandum. On January 9, 1997, the parties filed a Joint Pretrial Memorandum in which they stipulated that 1) the Defendant is not a licensed attorney and is not employed by an attorney; 2) the Defendant rendered services to the Debtor in reviewing her financial condition and in preparing her bankruptcy petition and schedules filed with this Court on June 27, 1996; 3) the Debtor did not sign the schedules of assets and liabilities filed in this case; and 4) the Debtor paid Bourque $850 which included the fee for his services and the Court's filing fee. The parties further agreed that there were no issues of fact to be litigated and that the issues to be determined were limited to 1) whether the Court should impose one or more civil penalties against the Defendant pursuant to § 110; and 2) whether the Defendant should be required to disgorge the fees he received from the Debtor.

On February 6, 1997, at the commencement of the trial, counsel to the Plaintiff and the Defendant reported in open court that they had reached a stipulation for injunctive relief and submitted a proposed Agreed Order to the Court. The Court entered the Agreed Order pursuant to which the Defendant 1) was required to provide to the U.S. Trustee's Office by February 28, 1997 a list of debtors for whom he has prepared bankruptcy petitions since August 21, 1996; 2) was required to comply with the provisions of

11 U.S.C. § 110; and 3) was permanently enjoined from engaging in the unauthorized practice of law.

Following the entry of the Agreed Order, the Court held a trial at which the Debtor and Bourque testified. The Plaintiff introduced three exhibits into evidence. After the trial, both parties filed briefs. Based upon the stipulated facts, testimony, documentary evidence, record of proceedings in the Debtor's Chapter 7 case, and the parties' briefs, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052.

## II. FACTS

The following facts were established at trial or through the stipulated facts set forth in the Joint Pretrial Memorandum. The Defendant operates a credit and debt counseling business as a sole proprietorship known as CDCA from an office in Cambridge, Massachusetts. He has operated the business for over 5 years. Bourque received a Bachelor of Arts degree from the University of New Hampshire and a Masters Degree in counseling from California State University at Los Angeles. Through his business, Bourque offers financial consulting and debt counseling services to people with financial problems, and assistance to debtors who wish to file bankruptcy petitions. Bourque is neither a licensed attorney nor an employee of a licensed attorney. Bourque has an employee, David DeVito ("DeVito"), who also acts as a credit counselor and petition preparer. DeVito is not an attorney. Bourque testified that he advertises his services, including his ability to provide assistance preparing bankruptcy petitions, in the Yellow Pages.

In September of 1995, after hearing a radio advertisement about Bourque's services, Hartman sought Bourque's assistance in assessing her financial situation. Hartman contacted Bourque's office by telephone and made an appointment. At their initial consultation, which lasted over one hour, Hartman told Bourque that she wanted to consolidate payments on her numerous unsecured debts, which were one year in arrears, into one payment. Bourque advised the Debtor that, in his view, debt restructuring was not possible because she could not afford any repayment. He advised her to file a Chapter 7 petition. According to the Debtor, during their initial consultation, Bourque repeatedly suggested that she purchase a "credit repair package" for $1,100. Hartman rejected this advice. Bourque did not offer any evidence to rebut this testimony. During the course of their consultation, Hartman decided to seek relief under Chapter 7 of the United States Bankruptcy Code. Bourque told the Debtor that his fee for preparing a bankruptcy petition was $850. Hartman indicated that she was unable to pay Bourque's entire fee at once. She and Bourque agreed that she would make an initial payment of $150 and then pay $50 per week until the entire fee was paid. Bourque told Hartman that he would not file the bankruptcy petition until his fees and the filing fee were paid in full. By mid-December 1995, the Debtor had paid to Bourque the agreed $850, which included the required court filing fee of $175.

The Debtor emphasized to Bourque that she wanted to file the bankruptcy petition by mid-December because she was expecting a baby on December 20, 1995, wanted to avoid making any court appearances after that date, was leaving her job on December 8, 1995, and would have no income after December 8, 1995. Bourque did not offer any evidence to contradict this testimony.

After making several calls to Bourque's office in the fall of 1995, which were not returned, the Debtor received, in November of 1995, a nine-page document entitled "Bankruptcy Information Sheets, Confidential" (the "Bankruptcy Questionnaire") from Bourque. Hartman signed and returned the completed Bankruptcy Questionnaire to Bourque in early December together with bills containing the addresses of her creditors. The Debtor signed page two of the Bankruptcy Questionnaire. Thereafter, Hartman continued to make telephone calls to Bourque's office to inquire about the status of the petition, leaving several messages. Bourque testified that he told Hartman in late 1995 that he needed a credit report to complete the petition. He obtained the credit report in May of 1996. Bourque did not

explain why he needed a credit report to prepare Hartman's petition.

In February of 1996, Bourque's agent, DeVito, called Hartman, identified himself as an employee of Bourque, and stated that he needed additional information to complete her petition, including addresses for her creditors. Hartman reported to DeVito that she had supplied the information to Bourque with the Bankruptcy Questionnaire. Although the completed Bankruptcy Questionnaire does not contain complete addresses for several of the Debtor's creditors, the Debtor testified that she sent copies of her bills containing the addresses to Bourque when she returned the completed Bankruptcy Questionnaire.

Bourque and DeVito prepared the Debtor's Voluntary Petition under Chapter 7, Schedules, Declaration Concerning Schedules, Statement of Financial Affairs, and Statement of Intentions (the "Documents") on the Official Forms prescribed by the Judicial Conference of the United States.[1] The Debtor did not sign the Voluntary Petition, Schedules, Statement of Financial Affairs, or other Statements. Bourque admitted that he signed Hartman's name on the Documents, including those portions required to be signed under penalty of perjury. Bourque signed the Debtor's name to the Documents a total of six times. He signed the Debtor's name twice on the Voluntary Petition, once on the Declaration Concerning Debtor's Schedules, once on the Declaration Under Penalty of Perjury appearing on the Statement of Financial Affairs by Individual Debtor, once on the Chapter 7 Individual Debtor's Statement of Intentions, and once on the Verification of Creditor Matrix. Bourque testified that he executed the Documents with Hartman's permission after a telephone conversation with her in which she indicated that she did not want to come to Bourque's office to sign the Documents. The Debtor did not indicate why she did not personally sign the schedules. She did not receive copies of any of the Documents prepared and filed by Bourque until she went to his office

on July 27, 1996, the date of her § 341 meeting of creditors.

Official Form 1, entitled "Voluntary Petition", which Bourque prepared and filed commencing the Debtor's Chapter 7 case, contains, on page 2, a section entitled "Certification and Signature of Non–Attorney Bankruptcy Petition Preparer (See 11 U.S.C. § 110)". This section is outlined in a box and contains the language in the format set forth below:

CERTIFICATION AND SIGNATURE OF NON–ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

Printed or Typed Name of Bankruptcy Petition Preparer

Social Security Number

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.

Signature of Bankruptcy Petition Preparer

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

Bourque left the entire Certification section of the Debtor's petition blank. Bourque did not indicate that he prepared the petition, did not sign his name, did not provide his social security number, did not give his address, did not indicate that DeVito had

---

1. Fed.R.Bankr.P. 9009 requires that the Official Forms be observed and used in bankruptcy cases.

assisted in preparing the petition, and did not give DeVito's social security number. Moreover, DeVito did not sign an attached sheet to the petition as an additional petition preparer. In addition, Bourque never sent copies of the completed Documents to the Debtor.

On June 26, 1996, DeVito hand delivered and filed with the Bankruptcy Court the Debtor's petition and a money order for the filing fee, for which a receipt was issued by the Clerk of the Bankruptcy Court. The filing fee was paid by a Century Bank money order, numbered 113089, dated June 16, 1996. It purportedly bears Hartman's signature. However, the Court finds that Hartman did not obtain or sign the money order. The signature bears no resemblance to Hartman's actual signature. Rather, the signature on the money order is in the same handwriting that appears on the Debtor's petition and schedules, which were signed by Bourque on behalf of the Debtor.

The master mailing matrix list of creditors that Bourque's office prepared and from which the Court issued notices to interested parties contains four incomplete addresses for creditors. At trial, Bourque conceded that the answers to several questions on the Schedules and Statements do not comport with the Debtor's answers as set forth in the Bankruptcy Questionnaire.

In early July of 1996, the Debtor received notice that the § 341 meeting of creditors would be held on July 27, 1996. On that day she went to Bourque's office, assuming that he would accompany her to the meeting. The Debtor asked Bourque what would happen at the meeting. He told her not to worry and that no creditors would appear at the meeting. He also told her that she should testify that she, not Bourque, signed the petition and schedules when questioned by the Chapter 7 Trustee.

Following the § 341 meeting, on July 28, 1996, the Chapter 7 Trustee filed with the Court a Report of No Distribution. The Debtor received a discharge on October 15, 1996.

The Debtor testified that she was dissatisfied with Bourque's services mainly because of the delay in filing the petition. Bourque expressed the view that the delay was not caused by his office but rather by Hartman's payment of his fees in installments and the necessity of obtaining a credit report. Bourque's explanation for the delay in the filing of the petition until June 1996 is deficient. The Debtor had paid Bourque's fees in full by December 1995, and Bourque had received the credit report by May of 1996, but the petition was not filed until June 27, 1996. Bourque did not adequately explain either 1) the necessity for obtaining a credit report for preparing the petition where Hartman had already provided Bourque with the completed Bankruptcy Questionnaire, which contained a list of her creditors and copies of all of her bills, or 2) the additional delay in preparing the petition from May to the end of June 1996. The Court finds that Bourque's delay in preparing the petition and his failure to communicate with the Debtor are inexcusable.

Bourque opined that he earned the fee charged in this case because he spent over six hours of time working on the debtor's case and that his usual charge for debt restructuring services is $75 per hour. In total, the Debtor paid $850.00 to Bourque, $725 of which was for his consulting and petition preparation services. The Debtor also paid Bourque the filing fee, which was paid to the Court with a money order signed by Bourque using the Debtor's name and which DeVito hand delivered to the Court.

In the Fee Disclosure Declaration filed by DeVito as agent of CDCA on September 23, 1996, DeVito certified that the firm received from the Debtor a fee in the amount of $675.00, that the firm received a money order for the filing fee of $175.00, that no other fees were received from the Debtor within the year prior to the filing of the bankruptcy petition, and that the Debtor owed no further monies to the firm. DeVito's Fee Disclosure Declaration was not filed within 10 days of the filing of the petition as required by 11 U.S.C. § 110(h)(1). In an Amended Fee Disclosure Declaration filed on February 10, 1997, DeVito, on behalf of the Defendant, stated that, in addition to receiving $175.00 in the form of a money order "obtained by the

debtor and payable to the Clerk of the United States Bankruptcy Court," the firm received $225.00 for the preparation of the debtor's bankruptcy petition, $210.00 for "Debt Counseling" and $240.00 for "time spent gathering and assembling information for the debtors [sic] petition."

Bourque testified that at the time he rendered services to the Debtor he was unaware of the provisions of § 110 of the Bankruptcy Code. He stated that he was unaware of the statute until he received this Court's Order to Show Cause dated July 3, 1996, which was sent to him sometime in July of 1996 in the Chapter 7 case of Carey Ann Shoufler, Case No. 96–14875–JNF, another case in which he prepared a debtor's petition. According to Bourque, after he received the Shoufler Order, he consulted with Attorney Gary Cruickshank in August of 1996 at which time he first became aware of the requirements of § 110.

At trial, the U.S. Trustee introduced into evidence petitions and schedules in bankruptcy cases in which Bourque had prepared documents for two other debtors. In the case of James M. Armstrong, Chapter 7 Case No. 97–10503–WCH, commenced on January 21, 1997, DeVito signed the petition's certification of bankruptcy petition preparer on behalf of CDCA. DeVito, as CDCA's agent, also executed the Fee Disclosure Declaration required by 11 U.S.C. § 110(h)(1), which also was filed with the Court on January 21, 1997. In the Fee Disclosure Declaration, DeVito certified, under the pains and penalties of perjury, that CDCA received a fee of $375.00 from the Debtor for preparing "their [sic]" bankruptcy petition and that "[t]he fee of $375.00 was the only fee received by CDCA from the debtor within 12 months immediately prior to the filing of the case." The debtor's Statement of Affairs, also prepared by CDCA, directly contradicts this statement. The response to question 9 concerning payments related to debt counseling or bankruptcy within one year prior to the petition date reveals that CDCA was paid $1,000, itemized as follows: "Debt Counseling

$ 375.00; Petition Info Gathering: $250, and Completion of Petition $375.00."

CDCA, by its agent DeVito, also prepared the petition, schedules and statements in the case of Kori Benaroya, Chapter 7 Case No. 97–10001–JNF. In the Fee Disclosure Declaration, DeVito, acting as agent of CDCA, indicated that CDCA received a fee of $550.00 from the debtor within the 12 months prior to bankruptcy and that this was the "only fee" received by CDCA during this period. The response to question 9 of the statement of affairs, however, contradicts DeVito's representations because the response reveals that CDCA received $700.00 within one year before the filing of the petition.

For a number of reasons, not the least of which was his counseling the Debtor to lie at the § 341 meeting, the Court finds that Bourque was not a credible witness. The Court does not believe that he was unaware of § 110 when he rendered services to the Debtor. Bourque used Official Form 1 to prepare the Debtor's Petition. Directly to the right of the lines where Bourque twice signed the Debtor's name is the block which contains the Certification of Petition Preparer. The block plainly references § 110 and indicates that penalties may be imposed for violation of § 110. The U.S. Trustee correctly points out in his brief that any reasonable person would have seen the language and consulted the statute. Moreover, Bourque's violations of the statute persisted after he allegedly became aware of § 110. The Court finds Bourque's testimony that he did not know about § 110 when he prepared the Debtor's documents to be incredible.[2]

## III. POSITIONS OF THE PARTIES

### A. Plaintiff's Argument

The U.S. Trustee asserts that the Defendant committed numerous violations of 11 U.S.C. § 110, in particular subsections (b)(1), (c)(1), (c)(2), (d)(1), (e)(1), (g)(1) and (h)(1). The U.S. Trustee points out that 1) Bourque failed to sign his name and provide his social

---

2. As will be discussed in the Discussion section of this Memorandum, the Court rules that Bourque's purported ignorance of the statute, even

if he were to be believed, is not a reason to refrain from imposing sanctions for violations of § 110.

security number on the petition and other documents he prepared as required by § 110(b)(2) and (c)(1); 2) Bourque did not provide the Debtor with a copy of the petition and schedules as required by § 110(d); 3) Bourque signed the Debtor's name to the petition and schedules in violation of § 110(e); and 4) Bourque collected the court filing fee from the Debtor in violation of § 110(g)(1).

The U.S. Trustee requests that the Court impose against the Defendant the mandatory fine for each violation of statute as permitted by § 110. The U.S. Trustee submits that Bourque failed to establish reasonable cause for his violations of 11 U.S.C. § 110(b)(1), (c)(1), or (d)(1). The U.S. Trustee also submits that the imposition of a $500 fine for each violation of 11 U.S.C. § 110(e)(1) and (g)(1) is mandatory. The U.S. Trustee further requests that the Court order disgorgement of the fees paid by the Debtor to Bourque.

### B. Defendant's Argument

Bourque conceded, both at trial and in various pleadings filed in this adversary proceeding, that he failed to comply with the requirements of 11 U.S.C. § 110 in this case. He asserts by way of defense to the imposition of the fines under § 110 that he was not aware of the requirements of § 110 when he prepared the Documents in the Debtor's case. He asserts that he was unaware of the statute until July of 1996, two months after the commencement of this case. Bourque maintains that his failure to comply with § 110(b)(1), (c)(1), and (d)(1), was due to reasonable cause, namely, his ignorance of the law, and that a fine or sanction for violating those subsections is unwarranted. In addition, the Defendant requests that the Court not impose any fine for his violations of 11 U.S.C. § 110(e)(1) and (g)(1), suggesting that Congress intended to allow a reasonable cause exception to these subsections even though the plain language of these subsections does not include a reasonable cause exception. Finally, the Defendant argues that his fees for petition preparation services were reasonable and that the Court should not order disgorgement in this case.

### IV. DISCUSSION

#### A. 11 U.S.C. § 110

Section 110 of the Bankruptcy Code sets forth specific requirements and guidelines for bankruptcy petition preparers and specifies penalties for a preparer's noncompliance with these requirements. It provides:

(a) In this section—

(1) "bankruptcy petition preparer" means a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing; and

(2) "document for filing" means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title.

(b)(1) A bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address.

(2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

(c)(1) A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document.

(2) For purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.

(3) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

(d)(1) A bankruptcy petition preparer shall, not later than the time at which a document for filing is presented for the debtor's signature, furnish to the debtor a copy of the document.

(2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

(e)(1) A bankruptcy petition preparer shall not execute any document on behalf of a debtor.

(2) A bankruptcy petition preparer may be fined not more than $500 for each document executed in violation of paragraph (1). . . .

(g)(1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.

(2) A bankruptcy petition preparer shall be fined not more than $500 for each document executed in violation of paragraph (1).

(h)(1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.

(2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt any funds so recovered under section 522(b).

(3) The debtor, the trustee, a creditor, or the United States trustee may file a motion for an order under paragraph (2). . . .

11 U.S.C. § 110.

Congress enacted § 110 as part of the Bankruptcy Reform Act of 1994 as a consumer protection measure to deter and provide remedies for perceived abuses and the unauthorized practice of law by an increasingly large number of nonlawyers who were advising and assisting debtors in filing bankruptcy petitions. *See* Lawrence P. King, 2 *Collier on Bankruptcy*, ¶ 110.01 at 110–5 (15th ed. Revised 1996) (hereinafter referred to as "*Collier*"). As the Senate Report indicates,

§ 110 was "intended to police fraud and abuse by such preparers" by subjecting preparers to punishment for violations of the statute. S.Rep. No. 103–168, 103rd Cong., St. Sess. 51 (1993), 1994 U.S. Code Cong. & Admin. News 1994, 3340. The House Judiciary Report also contains the following statement of congressional intent:

> Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the county. While it is permissible for a petition preparer to provide services *solely limited to typing*, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often *lack the necessary legal training and ethics regulation* to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside of the bankruptcy system.

H.R.Rep. No. 835, 103rd Cong., 2d Sess. 40–41 (1994), 1994 U.S. Code Cong. & Admin. News 1994 at 3365 (emphasis supplied). Accordingly, 11 U.S.C. § 110 requires the filing of various disclosures by petition preparers on the documents they prepare for filing, requires preparers to furnish copies of filed documents to the debtor, provides that preparers shall not execute documents on behalf of debtors, prohibits preparers from using misleading advertising, prohibits preparers from collecting or receiving any payments from debtors for filing fees, and requires petition preparers to file a fee declaration disclosing fees received.

> To ensure compliance with these requirements, as well as to prevent other abuses, section 110 contains detailed remedial provisions. It provides for turnover of excessive fees charged by petition preparers, fines for violations, actual and statutory damages, and injunctive relief, as well as attorneys' fees and costs for the party bringing the enforcement proceeding. In addition, violation of the provisions of section 110 may lead to criminal prosecution.

*Collier*, ¶ 110.01 at 110–5.

**B. Violations of 11 U.S.C. § 110 by the Defendant.**

The threshold issue that the Court must decide is whether the petition, schedules and

statement constitute one document because they were affixed and filed together or whether they constitute separate documents. Section 110(a)(2) defines "document for filing" as "a petition or any other document prepared for filing by a debtor in a United States Bankruptcy court or a United States district court in connection with a case under this title." 11 U.S.C. § 110(a)(2). A majority of courts has ruled that the Petition, Schedules, and Statement of Affairs, and Statement of Intentions constitute "separate forms under the Official Forms as prescribed by the Judicial Conference of the United States." *In re Paskel,* 201 B.R. 511, 516 (Bankr.E.D.Ark.1996). *See also In re Rausch,* 197 B.R. 109, 120 (Bankr.D.Nev. 1996); *In re Moore,* No. 95–11035, 1995 WL 819021, *2 (Bankr.N.D.N.Y. Aug. 28, 1995). The *Rausch* court relied upon the Advisory Committee Notes to the 1995 amendments to the Official Forms, which state that each form is a separate "document for filing." 197 B.R. at 120. Moreover, "the Official Forms for the petition, the schedules, the statement of financial affairs, and the statement of intention have specific sections which provide space for the disclosure of the petition preparer's name, address, signature, and [social security number]." *Id.* Therefore, in accordance with these cases, this Court concludes that any fines provided for by § 110 apply to each "document for filing" that the Defendant prepared for the Debtor. *Id.*

However, in *In re Brokenbrough,* 197 B.R. 839 (Bankr.S.D.Ohio 1996), the bankruptcy court rejected the United States Trustee's contention that a debtor's petition, schedules, statement of financial affairs and statement of intention constituted separate documents. 197 B.R. at 843. The *Brokenbrough* court held that "[s]ince these papers were affixed as one document, it would be overreaching to find that there are several documents for purposes of § 110 of the Bankruptcy Code. In fairness, there are no signature lines for the debtor, preparer, or attorney on Schedules A through J and the 'Summary of Schedules' page." *Id.* at 843–844.

■ This Court is persuaded by the majority approach and, in particular, by the *Rausch* court's analysis. Moreover, the rea-soning of the Court in the *Brokenbrough* decision is flawed because there is a separate signature line on the Petition, Verification of Schedules, Verification of Statement of Affairs, Statement of Intention, and Verification of Creditor Matrix. In addition, each of the five Official Forms contains a caption for the name of the case and the case number on the first page of the form. Furthermore, the documents can be filed with the Court separately. In practice, the petition is often filed first as a "skeleton petition," to obtain the benefits of the automatic stay, and the remaining documents are filed later. *See* Fed. R.Bankr.P. 1007(c).

■ In the present case, the Court rules that the Petition, Schedules, Statement of Affairs, Statement of Intention, and Verification of Creditor Matrix are separate documents for filing for the purposes of § 110(b)(1) and (c)(1). None of the five documents prepared by the Defendant for the Debtor contains either 1) a signature by Bourque as petition preparer, 2) the preparer's name and address, or 3) an identifying number for the petition preparer. Bourque's failure to sign his name and provide his address and identifying number on the each of the five documents constitutes separate violations of § 110(b)(1) and (c)(1). Accordingly, the Court finds that Bourque violated § 110(b)(1) five times and that he violated § 110(c)(1) five times.

■ The Court finds that the Plaintiff established that Bourque also violated 11 U.S.C. § 110(d)(1) because he failed to furnish the Debtor with copies of the documents. The Debtor testified that Bourque did not send her copies of the documents. Rather, the Debtor went to Bourque's office on the day of the § 341 meeting to obtain the documents. The Court also finds that the Plaintiff established that Bourque also violated 11 U.S.C. § 110(e)(1) five times. Bourque signed Hartman's name six times to five separate documents contrary to the statute's express prohibition.

■ Finally, the Court finds that Bourque violated § 110(g)(1) by collecting and receiving money from the Debtor for the Court's filing fee. Hartman's testimony that

she paid the filing fee to Bourque was unrebutted. Even though the money order was signed in Hartman's name, it was procured and signed in her name by Bourque. "Section 110(g)(1) prohibits a petition preparer from taking 'control' of the filing fee and ultimately controlling the timing of the bankruptcy filing." *In re Green*, 197 B.R. 878, 879 (Bankr.D.Ariz.1996). In the present case, by collecting the filing fee from the Debtor, Bourque, not the Debtor, determined when the Debtor could commence the Chapter 7 case, which ultimately was filed far beyond the time frame contemplated by the Debtor.

### C. Fines for Violations of 11 U.S.C. § 110

■ Section 110 provides civil penalties for each of the violations of statute by a bankruptcy petition preparer. The maximum fine for each for each infraction is $500. Three of the subsections provide exceptions to the imposition of a fine if the failure to comply with the statute is "due to reasonable cause." 11 U.S.C. § 110(b)(2), (c)(3), (d)(1). Section 110(b)(2) provides that a petition preparer who does not sign or print his name and address on the document in violation of § 110(b)(1) "may be fined not more than $500 for each such failure, unless the failure is due to reasonable cause." Similarly, § 110(c)(3) provides that a petition preparer who does not place an identifying number on the document may be fined "not more than $500 for each such failure unless the failure is due to reasonable cause." Likewise, § 110(d)(2) provides that a petition preparer who does not provide the debtor with copies of the documents filed may be fined not more than $500 for each document, unless the failure is due to reasonable cause. The Defendant maintains that even though § 110(e)(2) and (g)(2) do not expressly contain a reasonable cause exception, the Court should imply a reasonable cause exception. This argument is contrary to well-settled principles of statutory construction. Moreover, the legislative history to § 110 reveals that Congress purposefully excluded the reasonable cause language from subsections (e)(2) and (g)(2) to provide added incentive to preparers to comply with those provisions which do not contain the exception. Thus, Congress intended for a preparer's noncompliance with the provisions without the reasonable cause exception to be sanctioned even more strictly than those provisions which recognize a reasonable cause defense.

■ Section 110 does not define reasonable cause. Several courts have held that "reasonable cause to violate a statutory requirement exists where the violation is unavoidable through no fault of the violator." *Paskel*, 201 B.R. at 518; *Rausch*, 197 B.R. at 117. A preparer's ignorance or unawareness of 11 U.S.C. § 110 does not constitute reasonable cause for noncompliance with the statute. *Paskel*, 201 B.R. at 518; *In re Murray*, 194 B.R. 651, 658 (Bankr.D.Ariz. 1996); *Moore*, 1995 WL 819021 at *2. Like the Defendant in this case, the petition preparer in *Murray* argued that he did not intend to violate 11 U.S.C. § 110 as he was unaware of the existence of the statute. He further contended that his lack of intent constituted reasonable cause for his noncompliance. The court rejected this argument and held that a defendant's "ignorance of the law, even if true, would not be reasonable cause to vitiate the imposition of fines." *Murray*, 194 B.R. at 658. In *Moore*, the petition preparer asserted that he was unaware of § 110 at the time he rendered his services, but assured the court that he would comply with the statute prospectively. The court concluded that his unawareness was not reasonable cause to excuse compliance with the statute. 1995 WL 819021 at *2. This Court is persuaded by the reasoning in *Murray* and in *Moore* and holds that ignorance of the requirements of § 110 does not constitute reasonable cause for a preparer's noncompliance with the statute's various requirements.

Bourque maintains that his ignorance of § 110 should excuse his violations of the statute as his violations were not willful. The Court has found that Bourque's assertion that he was ignorant of § 110 until August of 1996 was incredible because of his use of forms that clearly referred to § 110. However, even if the Court were to believe that until July of 1996 Bourque was unaware of the statute that had governed his profession since October of 1994, his ignorance and lack

of intent to violate the statute are not reasons to refrain from imposing the civil penalties contemplated by the statute. Bourque, as a person who holds himself out as a professional capable of counseling persons in financial matters and assisting them in preparing bankruptcy petitions, had a duty to be aware of the requirements of § 110.

The cases cited by Bourque in his brief are inapposite and do not support Bourque's reasonable cause defense. In both *Rausch* and *In re Turner*, 193 B.R. 548 (Bankr.N.D.Cal. 1996), the petition preparers disclosed their identities on the petitions as petition preparers, and simply did not disclose their social security numbers. Thus, their violations of § 110 were less egregious than those committed by Bourque in this case. Accordingly, the Court finds that no reasonable cause existed for Bourque's violations of § 110(b)(1), (c)(1) or (d)(1).

■ Having rejected Bourque's reasonable cause defense, the Court must now determine the appropriate fine for each violation. Sanctions of up to $500 are appropriate for violations of each provision. The use of the word "may" indicates that the appropriate sanction is within the discretion of the Court. Bourque's failure to sign or identify himself on the documents resulted in the concealment of his role as petition preparer in this case. Given this fact, as well as his complete lack of remorse as exhibited at trial, and his continued violations of § 110 after he supposedly became aware of the statute's requirements, the Court finds no reason for leniency and will impose the maximum fine for each violation of § 110(b)(1) and (c)(1). The Court fines Bourque $2,500 for his failure to provide his name and address on each of the documents as required by § 110(b)(1) and $2,500 for his failure to provide an identifying number on each of the documents as required by § 110(c)(1). The Court fines Bourque $500 for his failure to furnish copies of the Documents to the Debtor as required by § 110(d)(1).

■ Section 110(e)(2) provides that a bankruptcy petition preparer may be fined not more than $500 for each document executed by the preparer on behalf of the debtor in violation of subsection (e)(1). Because of the importance of the accuracy of a debtor's petition and schedules, *see* 11 U.S.C. § 727(a)(4)(A), Congress rejected the Senate version of the bill that would have given a petition preparer authority to execute a document for the debtor. 2 *Collier*, ¶ 11.06 at 110–10. "In light of evidence that petition preparers frequently forged debtors' names on bankruptcy petitions, Congress was not convinced that there would ever be a circumstance that would justify a preparer signing a petition on behalf of a debtor." *Id.* Thus, subsection (e)(2) does not include an exception for "reasonable cause." In the present case, Bourque signed the Debtor's name six times on the documents in violation of § 110(e). The dispute between the Debtor and Bourque as to his authority is irrelevant, as the statute expressly prohibits a preparer from signing a document on behalf of a debtor, with or without a debtor's permission. Bourque's assertion that he had authority from the Debtor in this case does not excuse the violation, as the statute's prohibition is unambiguous. As Bourque signed five documents in violation of § 110(e)(1), the Court fines the Defendant $500 for each violation of § 110(e)(1) in the sum of $2,500.00.

■ Section 110(g)(2) provides that a petition preparer shall be fined not more than $500 for collecting and receiving filing fees from the Debtor in violation of § 110(g)(1). The use of the term "shall" indicates that once the Court has found a violation, a fine is mandatory. *Alaska Center for the Environment v. Reilly*, 762 F.Supp. 1422, 1427 (W.D.Wash.1991); *Ringbolt Farms Homeowners Ass'n v. Town of Hull* 714 F.Supp. 1246, 1260 (D.Mass.1989); *State of Vermont v. Brinegar*, 379 F.Supp. 606, 613 (D.Vt.1974). However, the amount of the sanction is within the Court's discretion. *In re 1095 Commonwealth Avenue Corp.*, 204 B.R. 284, 299 (Bankr.D.Mass.1997) (Rule 9011 violation). In the instant case, Bourque's collection of the filing fee from Hartman significantly delayed the commencement of her case, contrary to her intent and instructions to Bourque. Moreover, Bourque concealed his improper receipt and collection of the filing fee by procuring a money order to which he signed the Debtor's name, which

gave the false impression that the Debtor had paid the filing fee directly. In light of these circumstances, the Court finds that the maximum fine is warranted and fines Bourque $500 for this violation.

■ The Court rejects Bourque's argument that he should not be fined in this case because the Court did not fine him in the *Shoufler* case. Bourque mistakenly regards this Court's leniency in *Shoufler* as precedent for and a recognition of his ignorance defense. This Court's exercise of its discretion in favor of Bourque in *Shoufler*, the first case in which Bourque's violations of § 110 came to light, does not preclude the imposition of sanctions in other cases. Moreover, Bourque misinterprets the Court's statement that it would sanction Bourque if there were any further violations of § 110. That statement was not intended to absolve Bourque of liability for any violations of § 110.

### D. Disgorgement of Fees

■ In addition to the civil penalties imposed for the Defendant's noncompliance with § 110, the Court must determine whether the $675.00 fee paid to Mr. Bourque is excessive for the services he rendered to the Debtor, which services he has described as debt counseling, bankruptcy petition preparation, and time spent gathering and assembling information for the petition. Although the Defendant filed a declaration disclosing the fee that he received from the Debtor, he did so more than ten days after he filed the Debtor's petition, in violation of § 110(h)(1). Such a violation warrants a disallowance of any excessive fee charged by a preparer pursuant to (h)(2). *In re Schweitzer*, 196 B.R. 620, 626 (Bankr.M.D.Fla.1996).

■ When determining whether a fee is excessive, courts inquire whether the value and quality of the services provided by the preparer corresponds with the amount paid by the debtor. Some courts consider whether the services provided by a preparer were of poor quality and caused detriment to the debtor. *Paskel*, 201 B.R. at 518 ("The value of [the preparer's] services are a negative compared to the monetary harm and distress he caused [the] debtor."); *Brokenbrough*, 197 B.R. at 844 ("While it is true that the filing of

the debtor's petition enabled her to invoke this court's jurisdiction, little else was accomplished by this filing. The schedules are inadequately completed, the petition was filed under the wrong chapter and it was necessary for the debtor to retain competent legal counsel to correct these errors."); *Murray*, 194 B.R. at 658 ("The Court determines that the reasonable value of [the preparer's] services was zero, since [the preparer] lost the Debtors' information and/or documents on several occasions and only filed a master mailing list, a 'bare bones' petition, and Schedules I and J on their behalf, after the Debtors' car had been repossessed.").

■ In formulating its conclusion as to a reasonable fee for a bankruptcy petition preparer, one court compared the preparer to a legal secretary who earns $35,000.00 per year, estimated the preparer's time working on that debtor's case at 12 hours, and paid the preparer an hourly wage of $16.82. *In re Kassa*, 198 B.R. 790, 791–2 (Bankr.D.Ariz. 1996). Another court decided that a "reasonable fee to be charged by a non-lawyer providing assistance in preparing a bankruptcy case for filing is $50.00." *In re Cordero*, 185 B.R. 882, 884 (Bankr.M.D.Fla.1995). Because bankruptcy petition preparers may only offer typing services to debtors and may not give legal advice, this Court draws a similar comparison to secretaries for such preparers and finds that petition preparers are entitled to an hourly rate of $20.00.

■ The Court finds that the $675.00 fee charged by the Defendant was excessive and unreasonable. The Defendant stated at trial that he worked a little over four hours preparing the Debtors documents. If Bourque's services had been competent, the Defendant would be entitled to a fee of $100. However, the Defendant did not prepare the documents accurately and competently. The matrix contains numerous deficient addresses for creditors. Moreover, Bourque's preparation of the documents commencing the Debtor's case was unjustifiably delayed. The Court finds that the value of Bourque's services to the Debtor was $50 and disallows $625.00 of the fee previously paid by the Debtor pursuant to 11 U.S.C. § 110(h). The

Defendant is hereby ordered to immediately disgorge the sum of $625.00 to the Debtor.

 Section 110 does not specify who receives the fines imposed under its provisions. This action was brought by the United States Trustee, and the Court could order the fine paid to the General Treasury of the United States. The Court finds that in view of the policy in favor of deterring petition preparers from violating § 110, the Court should encourage Chapter 7 trustees to review debtors' transactions with petition preparers and, if appropriate, bring disgorgement and civil actions under § 110. In a no asset case, the Chapter 7 trustee has little incentive to review and object to a debtor's transactions with a petition preparer. To provide this motivation, the Court shall make the $8,500 fine payable to the Chapter 7 trustee for the benefit of the Debtor's estate. The Chapter 7 trustee shall withdraw her Report of No–Distribution. The Court shall issue a bar date for the filing of claims, and the trustee shall administer this estate as an asset case.

The United States Trustee has not alleged that Bourque has continually engaged in conduct in violation of 11 U.S.C. § 110 and has not requested that the Court enjoin Bourque from acting as a bankruptcy petition preparer pursuant to 11 U.S.C. § 110(j)(2)(B). In view of Bourque's numerous violations of § 110 in this case, and the evidence that he violated § 110 in two cases filed after the Debtor's case, the Court will issue an injunction prohibiting Bourque from acting as a bankruptcy petition preparer if he commits any further violation of § 110 or if he fails to pay the penalties imposed in this case. *See* 11 U.S.C. § 110(j)(2)(B).

## V. CONCLUSION

For the foregoing reasons, the Court orders the Defendant to immediately pay $8,500.00 to the Chapter 7 trustee and to immediately disgorge $625.00 to the Debtor. The Defendant shall file with the Court proof of compliance with this order by May 12, 1997.